UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

| | |
|---|---|
| BOBBY T. BROWN,          ) | |
|          ) | |
|       Plaintiff,     ) | |
|          ) | DOCKET NO. 04-30105-MAP |
| v.          ) | |
|          ) | |
| F.L. ROBERTS & CO., INC.   ) | |
| d/b/a JIFFY LUBE,      ) | |
|          ) | |
|       Defendant.    ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION AND STATEMENT OF FACTS

The plaintiff, Bobby Brown, seeks judgment in his favor on his claim of discrimination based upon a failure to accommodate his religious practices. In 2001-2002, F.L. Roberts & Co., Inc. ("F.L. Roberts") changed its personal appearance policy at its Jiffy Lube operations, requiring all employees to be clean-shaven to retain jobs with customer interaction. Because shaving his face would have violated Mr. Brown's religious practices, he requested an accommodation to keep his customer contact position at the Hadley Jiffy Lube while practicing his religion. F.L. Roberts refused to accommodate him and removed any customer contact he had at the time. The company banished him to work exclusively in the lower oil change bay, where work conditions were harsh, uncomfortable and isolating. That adverse action is the basis for Mr. Brown's claim in this case.

Bobby Brown has been a practicing Rastafarian since 1991.[1] Mr. Brown acknowledges Jah (the name of God for Rastafarians) as his God, regularly reads the Bible, and has visited with

---

[1] The facts in Introduction and Statement of the Facts section of the Memorandum are all derived from Bobby

major priests of the religion in Jamaica. Adherents to Rastafarianism do not shave their faces or cut their hair, and Bobby Brown has followed this religious practice for years.

Mr. Brown began working for Jiffy Lube in Hadley in 1999. During his tenure at Jiffy Lube he told his manager, Warren Spears, and his assistant manager, Bryon Fuller, that he was a Rastafarian. He also told them that as a Rastafarian, he did not shave his face or cut his hair. Until Jiffy Lube changed its policy in 2001-2002, Bobby Brown was not required to shave in order to work at any job at the store in Hadley. As a result, he rotated through many jobs at the Jiffy Lube, including work as a lower bay technician, upper bay technician and greeter/salesman. The latter position meant that Mr. Brown had a great deal of communication with customers. Even with all of Mr. Brown's customer interactions, F.L. Roberts never conveyed to him that a single customer complained about Mr. Brown's personal appearance.

Some time in December, 2001, F.L. Roberts changed its policies concerning facial hair at its Jiffy Lube stores. From that time forward, Jiffy Lube employees who wanted positions with customer contact had to shave their facial hair. If they did not do so, company policy required the employees to work as lower bay technicians to remain employed, out of sight of customers.

When Bobby Brown learned of the coming change, he told his supervisor, assistant manager Bryon Fuller, that the policy should not be applied to him by Jiffy Lube because his religious practice prevented him from shaving his beard. Mr. Fuller told Richard Smith, the division manager of Jiffy Lube, that Mr. Brown was claiming his religion prevented him from shaving, and that he wanted to retain his positions with customer contact. Mr. Smith responded that if Bobby Brown wished to keep his facial hair, he was going to be permitted to work only in

Brown's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment.

the lower bay, without customer contact.

Mr. Smith personally came to the Hadley Jiffy Lube in December, 2001 or January, 2002 and explained various policy changes at the Jiffy Lube, including the policy change concerning facial hair. Either at that meeting or one shortly thereafter, Mr. Smith spoke to Bobby Brown directly about Mr. Brown's request. Mr. Brown told Mr. Smith that he could not shave because of his religion, but he did not want to be confined only to the lower bay and he wanted to be able to work at other jobs at the Jiffy Lube.

Mr. Smith responded that he did not have the time to check on the religion of everyone at Jiffy Lube, and that Mr. Brown could either work in the lower bay, or leave Jiffy Lube. Mr. Smith reminded Mr. Brown of Jiffy Lube's new policy; any employee who did not want to shave his beard was required to work only in the lower bay, without customer contact.

Mr. Brown, faced with unemployment, stayed at Jiffy Lube, but worked exclusively in the lower bay for the next five months or so. Working only in the lower bay (or "the hole" as Mr. Brown called it) meant that Mr. Brown was freezing in the winter, as there was no heat in the hole. Mr. Brown suffered oil burns during these five months and injuries to his hands and head from conditions in the hole. The job was dangerous for him, and many times he could not take breaks when he was the sole person in the hole. He was not permitted to work any other jobs during his last five months, and he became frustrated and demoralized.

Mr. Brown filed a religious discrimination complaint at the Massachusetts Commission Against Discrimination ("MCAD") while he worked at the Jiffy Lube, weeks after he was banished. Despite being served with the MCAD complaint, F.L. Roberts never offered Bobby Brown *any* accommodation at all. F.L. Roberts chose merely to follow its policy of prohibiting

customer contact.

However, F.L. Roberts exempted an entire division full of employees from the policy change taking place at the Jiffy Lubes. F.L. Roberts has four divisions within its corporate structure: an oil change division, a car wash division, a retail convenience store division and a very small wholesale division. Mr. Smith was the head of the oil change and car wash division, and he instituted the personal appearance policy change at those two divisions. Mr. Smith told the Chief Executive Officer of F.L. Roberts, Steven Roberts, of the change he was making at Jiffy Lube. He discussed the issue at a staff meeting. But Mr. Roberts, and his Vice President of Operations, Carol Voyik, never imposed this change on any retail convenience store or gas station, effectively exempting F.L. Roberts' largest division from the personal appearance standard being applied at the Jiffy Lube. The retail convenience stores and the gas stations owned by F.L. Roberts continue to this day to allow all employees, including those with customer contact, to wear beards and facial hair.

F.L. Roberts also owns a hotel, and it owns a restaurant which is part of a truck stop in Whately, Massachusetts on Interstate 91. All employees at the restaurant and at the truck stop may have facial hair (photographs of the cooks are attached to the Affidavit of Bobby Brown), regardless of customer contact. Mr. Roberts, owner of the defendant, did not require the food handlers, wait staff or any other employee to be clean-shaven at the restaurant. Mr. Borgatti, human resources head, never considered whether customers might be more concerned with facial hair at a restaurant than at an oil change operation, and apparently Mr. Roberts believed customers did not care about facial hair at the restaurant, convenience stores and gas stations, only at the car washes and oil change garages.

4

Employees of the Jiffy Lube in Hadley could not have facial hair and greet customers, but continued to appear to customers with grease on their arms and hands at the store after the personal appearance change.

## II.    PROCEDURAL HISTORY

Mr. Brown filed a claim for religious discrimination with the MCAD on March 5, 2002 and with the Equal Employment Opportunity Commission ("EEOC").  The MCAD found probable cause to credit Mr. Brown's claims of discrimination on November 19, 2003.  Mr. Brown requested dismissal from the MCAD on February 3, 2004, received a right to sue letter from the EEOC on March 5, 2004, and timely filed this complaint.

## III.    STANDARD OF REVIEW

Courts should enter summary judgment in favor of a moving party where "the moving party…has demonstrated that there are no material facts in dispute, and that therefore, it is entitled to judgment as a matter of law."  *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 191 (D. Mass. 2004) *aff'd on separate grounds*, *Cloutier v. Costco Wholesale Corp*., 390 F. 3d 126 (1st Cir. 2004).  After the moving party demonstrates that the evidence does not support the nonmoving party's case, "the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof to demonstrate that a trier of fact reasonably could find in his favor." *Cloutier*, 311, F.Supp. at 192, *quoting Sands v. Ridefilm Corp*., 212 F. 3d 657, 661 (1st Cir. 2000)(further citation omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Sands v. Ridefilm Corp*., 212 F. 3d 657, 661 (1st Cir. 2000).   Where no rational trier of fact could find for the non-moving party, "there is not a genuine issue for trial".  *Matsushita*

5

*Electric Industrial Co. v. Zenith Radio Corporatio*n, 475 U.S. 574 (1986).

## IV.   ARGUMENT

A.   F.L. ROBERTS DISCRIMINATED AGAINST BOBBY BROWN UNDER TITLE VII BY TAKING AN ADVERSE EMPLOYMENT ACTION AGAINST HIM, WITHOUT OFFERING A REASONABLE ACCOMMODATION TO HIS RELIGIOUS PRACTICE, IN THE ABSENCE OF ANY UNDUE BURDEN

Before F.L. Roberts assigned Bobby Brown permanently to the lower bay of its Hadley Jiffy Lube store, Bobby Brown had openly declared to management personnel that he was a practicing Rastafarian and did not shave because of his religious beliefs.  When F.L. Roberts announced that it was making a major change in its appearance policy, despite its notice of Mr. Brown's religious practice, it offered no accommodation to him after he specifically requested an accommodation.  This failure to offer reasonable accommodation, when F.L. Roberts had not shown any undue burden, requires judgment for Bobby Brown under Title VII.

Under Title VII of the Civil Rights Act of 1964, employers may not discriminate against employees based upon the religion of the employee.  42. U.S.C. § 2000e-2(a).  The discrimination prohibited includes a requirement that an employer reasonably accommodate an employee's unless it would cause undue hardship.  42. U.S.C. § 2000e(j).  The general principle is that "Title VII requires employers and labor organizations to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees".  *E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados de. P.R.*, 279 F. 3d 49, 55 (1st Cir. 2002).  *See also*, *Cloutier v. Costco Wholesale Corp*., 390 F. 3d 126 (1st Cir. 2004).

The First Circuit has confirmed that in the context of a religious discrimination case under Title VII, it will apply a two part framework.  *Cloutier*, 390 F. 3d at 133.  The plaintiff

must first "establish a prima facie case of religious discrimination based upon a failure to accommodate" *Union Independiente*, 279 F. 3d at 55. To make this prima facie case, the plaintiff must show that "(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the [defendant's] attention and (3) the religious practice was the basis for the adverse action." *Id.* (citations omitted).

Once the plaintiff has met these three requirements and established a prima facie case, "the burden then shifts to the employer to show that it offered a reasonable accommodation, or if it did not offer an accommodation, that doing so would have resulted in undue hardship". *Cloutier*, 390 F. 3d at 133.

1.    Bobby Brown Can Prove a Prima Facie Case of Religious
      Discrimination Based Upon a Failure to Accommodate

Bobby Brown's facts prove a prima facie case under the requirements set out by *Cloutier* and *Union Independiente*. The facts of this case specifically meet all three "sub-tests" articulated in *Union Indendiente*. *Union Independiente*, 279 F. 3d at 55.

a.    Bobby Brown's Religious Practice Conflicted with F.L. Roberts'
      New "No-Beard" Policy at Jiffy Lube

(i)    Bobby Brown has a bona fide Rastafarian religious practice

Throughout this case, and the case at the MCAD, Bobby Brown has shown that he is an adherent of Rastafarianism. He has practiced as a Rastafarian for over ten years. He has not shaved his beard or cut his hair in years, as the Bible commands Rastafarians not to cut their hair, either on their face or on their head. This particular practice derives from an attempt by Rastafarians to appear like the Lion of Judah, a major symbol in the religion. Mr. Brown reads the Bible regularly as part of his religious practice. He has engaged in religious practice with

priests of the religion, in Jamaica and in the United States.  He has professed belief in Jah, the name for the deity in Rastafarian practice.  *See*, Affidavit of Bobby Brown, ¶¶ 2 -7.

These facts meet the test required by the U.S. First Circuit Court of Appeals, which is that the practice is religious and is sincerely held.  Rastafarianism is a religion founded by Haile Sellasie and has adherents throughout Jamaica and the United States.   Bobby Brown's practices show that he sincerely holds the beliefs of Rastafarianism, including the prohibition on cutting hair.

Title VII itself includes what the First Circuit has described as a "capacious definition of religion", a view reflected in the regulations as well.  *Union Independiente*, 279 F. 3d at 55; 42 U.S.C. 20003(j); 29 C.F.R. § 1605.1  As noted by the Supreme Court, Title VII's protection of religious beliefs includes those beliefs which are not "acceptable, logical, consistent or comprehensible to others…"  *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 714 (1981) *cited in Union Independiente*, 279 F. 3d at 55.

This view, under the statute and cases "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."  *Union Independiente*, 279 F. 3d at 55.  The facts submitted by Mr. Brown to this court show under the "capacious definition of religion", his beliefs and practices are religious and deeply held.

(2)     Bobby Brown's religious practice conflicted with an employment
 requirement

F.L. Roberts prohibited its Jiffy Lube employees with facial hair from maintaining their positions in Hadley with customer contact.  Bobby Brown, who worked as a greeter/salesman, and as a technician in the lower and upper bays, could not cut his facial hair without violating his religious practice.  He told F.L. Roberts that he did not wish to lose his "upstairs" positions, but

8

F.L. Roberts followed their policy and banished him to the lower bay because he would not cut his hair. *See*, Affidavit of Bobby Brown. This is an actual and clear conflict between the employment requirement and Mr. Brown's religious practice.

> b.    Bobby Brown Notified F.L. Roberts of His Religious Practice

Mr. Brown told his manager, Warren Spears, and his assistant manager, Bryon Fuller, of his religious practice, and that he was a Rastafarian, well before the policy change by F.L. Roberts. Affidavit of Bobby Brown, ¶ 12; Affidavit of Bryon Fuller, ¶¶ 3 – 12. He then notified Mr. Fuller of his religious practice, again, and of his request for an accommodation, after the policy change was announced. Affidavit of Bryon Fuller, ¶¶ 5 – 12; Affidavit of Bobby Brown ¶¶ 13 – 14.

Finally, Mr. Brown talked directly to Mr. Smith, the head of operations of the Jiffy Lube division, and told him of his religious practice and the fact that he believed he was facing discrimination. Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 83); Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 14). According to the testimony of Mr. Smith himself, he received notice of Mr. Brown's religious practice, as did Mr. Fuller when he was assistant manager. F.L. Roberts was on notice of Mr. Brown's religious practices, satisfying part two of the *Union Independiente* test.

> c.    The Basis of the Adverse Decision was Mr. Brown's Religious Practice

The admitted reason for F.L. Roberts banishing Mr. Brown to the lower bay at the Hadley Jiffy Lube was because he would not shave his facial hair. Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 87); Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 20). This was the policy of

F.L. Roberts, and F.L. Roberts followed its policy in requiring Mr. Brown to work exclusively in the lower bay. Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 4).

Mr. Brown's refusal to shave his facial hair was based entirely on his religious practice. *See*, Affidavit of Bobby Brown, ¶¶ 2-17. F.L. Roberts' decision to remove Bobby Brown from his other positions, and assign him solely to work in the lower bay, was grounded in Mr. Brown's religious practice, his refusal to shave because of religious mandates he followed.

Mr. Brown can therefore show that he meets the three sub-part test of *Union Independiente*, a test followed by this court in *Cloutier* prior to the appeal of that case.

> 2.     F.L. Roberts Failed to Offer or Provide any Reasonable
>         Accommodation to Bobby Brown

When a plaintiff has established his prima facie case, the employer then has the burden of showing "that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Cloutier*, 390 F. 3d at 133. F.L. Roberts offered no reasonable accommodation to Mr. Brown, and instead, banished him to the lower bay of the Hadley Jiffy Lube.

Indisputably, Mr. Brown notified Mr. Fuller and Mr. Smith of his religious practice of not shaving. Affidavit of Bryon Fuller, ¶¶ 3 – 12; Exhibit 3 to Affidavit of Joel Feldman; (Deposition transcript of Richard Smith, pp. 83); Affidavit of Bobby Brown, ¶15; Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 11). In fact, Mr. Brown also explicitly told Mr. Smith that he felt that F.L. Roberts was discriminating against him because of his religious beliefs. Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 83); Affidavit of Bobby Brown ¶ 15.

Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 14). When Mr. Smith said that Bobby Brown had to spend all of his work time in the lower bay, Mr. Brown replied that he wanted to work at other jobs, not just downstairs, and reiterated to Mr. Smith that he could not shave his beard because of his religious beliefs. Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 83, 86-87). Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 15).

To sum up, Bobby Brown accused F.L. Roberts of discriminating and asked for some accommodation to resolve the conflict between the new policy and his religious beliefs. In response, Mr. Smith told Mr. Brown that the company would strictly follow the new appearance policy, and proceeded to banish him to lower bay employment. See, Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 87). Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 20). Rather than finding some middle ground, or taking even one step back from its policy, F.L. Roberts followed the policy to the letter.

Imposing an employment policy to the letter, which then causes an adverse employment action, does not provide an employee the legally required reasonable accommodation. The Seventh Circuit Court of Appeal has found that an employer's accommodation is not considered "reasonable" unless the conflict between the requirement of the employer and the religious practice of the employee is eliminated. *E.E.O.C. v. Ilona of Hungary, Inc.*, 97 F. 3d 204, 211 (7th Cir. 1996). This court need not determine the "reasonableness" of the accommodation in this case because none was offered. Mr. Brown told his employer that he could not shave because of his religion, but also that he did not wish to be involuntarily placed in "the hole" for his entire

forty hour work week.  He asked for some accommodation from the impact of the new rule as a result of the connection of the new rule to his religious practice.  What he received from F.L. Roberts was a lockstep adherence to the rule, with no accommodation offered during the five months after the policy was instituted.  There was no accommodation for Mr. Brown even after he filed his complaint at the MCAD.  Instead, there was only implementation of the policy with its punitive impact on Mr. Brown.

The provision of Title VII at issue in this case "requires an employer to accommodate the religious observances of its employees unless such accommodation…would cause the employer undue hardship." *Carter v. Bruce Oakley, Inc*., 849 F. Supp. 673, 675 (E.D. Ark 1993).   In other words, an employer must be given relief from the strict enforcement of work rules which conflict with an employee's sincerely held beliefs, unless granting such relief to the employee places an undue burden on the employer.   The Supreme Court has noted that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business".  *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 69 (1986)(citation omitted).  F.L. Roberts heard the request of Mr. Brown and offered only the punishment dictated by the policy:  If Mr. Brown kept his beard, he lost his job responsibilities in the upper bay and as greeter/salesman.  If he did not agree to the policy as written, without accommodation, he would be terminated by F.L. Roberts.

Rather than cooperation, F.L. Roberts acted with impunity on Mr. Brown's request.  The only action taken was implementation of the new policy, with its attendant negative effect on Mr. Brown.  The defendant failed completely to offer an accommodation, any accommodation, to Mr. Brown.

2.    F.L. Roberts Would not Suffer any Undue Harm from
Accommodating Mr. Brown under the *Cloutier* doctrine

Given the complete lack of accommodation offered by F.L. Roberts, the remaining

defense available to F.L. Roberts is that it can demonstrate that "any accommodation would have

caused it undue hardship". *E.E.O.C. v. Ilona of Hungary, Inc.*, 97 F. 3d 204, 211 (7th Cir. 1996).

As the First Circuit noted recently in *Cloutier*, "courts are somewhat skeptical of hypothetical

hardships that an employer thinks might be caused by an accommodation that never has been put

into practice". *Cloutier*, 390 F. 3d at 135, *citing Draper v. U.S. Pipe & Foundry Co*., 527 F. 2d

515, 520 (6th Cir. 1975). A defendant must show that specific hardships would be imposed by

specific accommodations. *Cloutier*, 390 F. 3d. at 135 *citing Toledo v. Nobel-Sysco, Inc*., 892 F.

2d 1481, 1490 (10th Cir. 1989).

No undue hardship was claimed in the Amended Answer in this case, but in a court

hearing, the defendant indicated that it would be relying on the assertions made in the *Cloutier*

case. In that case, an employee of Costco, a retail store, asserted that her facial piercings were

part of her strict adherence to the Church of Bodily Modification ("CBM"), and that Costco's

rule prohibiting facial piercings was religious discrimination in the absence of a reasonable

accommodation. The employee, Ms. Cloutier, initially offered to cover her eyebrow piercings

with a flesh-colored bandage, but Costco rejected this offer. *Cloutier*, 390 F. 3d at 129.

Ultimately, Ms. Cloutier was offered this same accommodation and she then rejected the same

offer she had made earlier, claiming that observance to CBM required that her piercings be

displayed in public at all times. *Id.* at 130.

The Court of Appeals affirmed the lower court's ruling in favor of Costco on a motion

for summary judgment, on the ground that the only accommodation acceptable to Ms. Cloutier,

13

an exemption from the rule, would cause Costco an undue hardship. *Id.* at 132. That hardship, said the court, was that Ms. Cloutier's piercings would "adversely affect the employer's public image", after Costco had made a determination that facial piercings would detract from the "professional image" it wished to project. *Id.* at 135-136.

Ms. Cloutier noted in her argument that Costco would suffer no undue burden exempting her from the rule because Costco overlooked violations of this policy at its own store. *Id.* at 136-137. Costco responded that it did not know of these violations. The court found it important to note that the instances of violation which were cited were isolated and not known by Costco. As the court noted with particularity, "there is an important distinction between an employee who displays facial jewelry unnoticed in violation of the dress code" and one who does so under an exemption from the dress code. *Id.* at 137.

To the extent F.L. Roberts relies on Costco's formulation of undue burden, that its professional image would suffer if Jiffy Lube customer contact employees were bearded, its "undue burden" defense must fail. F.L. Roberts has exempted its largest division from its personal appearance code. The three main divisions of F.L. Roberts are the oil change division, the car wash division, and the retail convenience store/gas station division, which Mr. Borgatti says was much larger than any other. F.L. Roberts mandated a "no customer contact" rule if an employee was not clean shaven in the oil change and car wash divisions, headed by Mr. Smith. But the company totally exempted every employee from the retail convenience store division from this rule, including cashiers, waiters and cooks!

The failure to implement the personal appearance change at the retail convenience stores and at the restaurant undoes any claim of a Costco-like undue burden. Convenience store

14

employees presumably have much more customer traffic and contact than employees at a Jiffy Lube.  They must accept money from customers in face to face transactions all of the time, when customers are purchasing food and car products, for example.   Customers routinely observe the employees' manner and appearance.  Yet, for these employees, the "public, professional image" F.L. Roberts wants to project is unnecessary and unwarranted.

The retail convenience store division also includes a restaurant/gas station in Whately, Massachusetts.  Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 110).   F.L. Roberts has not required any employee of this restaurant to shave facial hair, as evidenced by the photos attached to the Affidavit of Bobby Brown.   The persons who cook soup, and serve cooked meals, are exempt from a "no beard" policy,  while the oil change employees are not.2

In sum, one arm of F.L. Roberts, the one selling oil changes, transmission fluid and windshield wipers must be clean shaven, while other employees who sell food and some of the same products at convenience stores, and prepare and serve cooked food at a restaurant, may have facial hair.  The company does not have the "isolated pockets of resistance" to being clean-shaven mentioned in *Cloutier*; instead, all of the employees of a major division engaged in the business of selling car-related products at gas stations, like the car-related products sold at Jiffy Lube, may have facial hair according to the F.L. Roberts policy.

These facts do not meet, as a matter of law, the requirements set out by the "undue

---

2 Specific cases cited by the First Circuit in *Cloutier* to support its ruling on what constitutes undue burden where personal appearance is at issue are about, in the main, employers in the food service business.  *See, e.g. E.E.O.C. v. Sambo's of Georgia, Inc.*, 530 F. Supp. 86 (N.D.Geo. 1981) and *Hussein v. The Waldorf-Astoria, et. al.*, 134 F. Supp. 2d 591 (S.D.N.Y. 2001). Those cases are replete with references to safety and health issues around food preparation.   It is ironic indeed that one of the defenses listed in the Amended Answer of the defendant in this case is that being clean-shaven is a bona fide occupational qualification ("BFOQ")for a Jiffy Lube, yet, at the restaurant

burden" analysis of *Cloutier*.   The company chose to allow some large fraction of the company work force to have facial hair in work situations that arguably call for a more professional, "sanitary" look, especially at the restaurant,.  F.L. Roberts' policy exempts many employees from the company requirements at Jiffy Lube.  An accommodation for Bobby Brown cannot, therefore, cause an undue burden given the "important distinction" of the "exemption from the dress code" of many employees of F.L. Roberts, as noted in *Cloutier*.  Exempting Bobby Brown would only be following the policy F.L. Roberts implements in the retail convenience division, not creating a single episode of exemption.

      B.     <u>F.L. ROBERTS VIOLATED MASSACHUSETTS GENERAL LAWS C.
            151B § 4(1A) BY FAILING TO ACCOMMODATE BOBBY BROWN
            IN THE ABSENCE OF UNDUE BURDEN</u>

As the Cloutier Appeals Court noted, "Massachusetts law prohibits an employer from enforcing a condition of employment that would require an employee to violate or forego the practice of her creed or religion."  *Cloutier*, 390 F. 3d at 137.  That law is Massachusetts General Laws c. 151B § 4(1A), and it imposes a reasonable accommodation requirement which is "defined as one that 'shall not cause undue hardship in the conduct of the employer's business'". *Id. citing* G.L. c. 151B § 4(1A).

The Massachusetts Supreme Judicial Court prescribes a three part test for determining whether the statute has been violated.  The employee must show that the employer made him violate a religious belief sincerely held; an employee must give ten days notice if a religious observance forms the basis for a request for time off; and then, the burden shifts to the employer to show that it offered a reasonable accommodation or that an undue burden would result from

---

owned by F.L. Roberts, being clean-shaven is not a BFOQ.

offering such accommodation. *N.Y & Mass. Motor Serv., Inc. v. Mass. Comm'n Against Discrimination*, 401 Mass. 566, 575-576, 517, N.E. 2d 1270, 1276 (1988). The statute also provides a list of what constitutes undue hardship, none of which have any relevance to this case.3

For the reasons noted in the comparable section of the Title VII argument, Mr. Brown can prove a prima facie case under c. 151B, and the burden of showing a reasonable accommodation, or in the absence of such accommodation, an undue burden, shifts to F.L. Roberts. And as noted above, the particular undue burden claimed by Costco in the *Cloutier* case, apparently the basis for the undue burden claim of F.L. Roberts, must fail for the reasons also mentioned above.

But c. 151B has been interpreted by the Supreme Judicial Court to also require the fact-finder to look into the "nature and operations of the employer's business to ascertain whether any of the conditions which might constitute undue hardship are present." *N.Y & Mass. Motor Serv., Inc,* 401 Mass. 566, 576, 517 N.E. 2d at 1276. Additionally, the fact finder must "focus on whether the employer could have exercised its managerial discretion in such a way that the employee's religious obligations could have been reasonably accommodated". *Id.*

Thus it is not enough under c. 151B for the employer to simply assert baldly that some imperative exists for asserting its business prerogative. The employer must make a specific showing about the nature and operation of its business to prove that it will suffer undue burden.

---

3 Undue hardship "shall include the inability of an employer to provide services which are required by and in compliance with all federal and state laws,…or where the health or safety of the public would be unduly compromised by the absence of such employee or employees, or where the employee's presence is indispensable to the orderly transaction of business and his or her work cannot be performed by another employee of substantially similar qualifications during the period of absence, or where the employee's presence is needed to alleviate an emergency."

It must also determine whether the discretion inherent in the management staff of the employer could have been exercised so that the employee could have continued to practice his religious beliefs.

F.L. Roberts cannot make this showing under c. 151B. There is nothing about an oil change business that requires the business to have clean-shaven employees dealing with customers, when the company's restaurant, hotel, gas station and retail convenience store business do not need clean-shaven employees to "impress" with customers with its professionalism. Arguably, the restaurant business can make some claim to health or safety concerns about facial hair that do not exist in the oil change business. *See, e.g. E.E.O.C. v. Sambo's of Georgia, Inc.*, 530 F. Supp. 86 (N.D. Geo. 1981) and *Hussein v. The Waldorf-Astoria, et. al.*, 134 F. Supp. 2d 591 (S.D.N.Y. 2001). The failure to mandate a personal appearance standard in the restaurant and convenience food retail settings shows that no undue burden would inure to F.L. Roberts for accommodating Mr. Brown's request.

F.L. Roberts also cannot make a *specific* showing about whether some accommodation could have been offered by the company through the "exercise of managerial discretion" to satisfy Mr. Brown's religious obligations, because it never offered one. The agency which administers c. 151B, the Massachusetts Commission Against Discrimination has found determinative, in its analysis of reasonable accommodation/undue burden, the failure of a company to engage with the employee in an "interactive process". In *Marquez v. Massachusetts Bay Transportation Authority*, MCAD Docket No. 97-BEM-3223, 25 Massachusetts Discrimination Law Reporter 478 (2003), the Full Commission on an appeal by the respondent found that the respondent's claim of undue burden will fail when it fails "to engage in a

18

meaningful dialogue with an employee in order to investigate fully whether a particular accommodation can be made."4  See,  *Marquez*, 25 MDLR at 479.   The MCAD found that like handicap discrimination cases, religious discrimination cases with a "reasonable accommodation component require an "interactive process" between employer and employee.  That requirement derives from the MCAD's interpretation of the language used in both the handicap and religious discrimination contexts, where "the statutory language is the same and [the Full Commission] see[s] no reason to interpret it differently."  *Marquez*, 25 MDLR at 479.  As the agency which administers the statute, the MCAD is entitled to deference when it interprets G.L. c. 151B.  *See, e.g., College-Town v. MCAD*, 400 Mass. 156, 166 (1987).5

The evidence is abundantly clear that F.L. Roberts cut off any conversation by confining Mr. Brown to the lower bay when he asked for relief from the policy change.  There was no interactive process; there was no offer of any accommodation, unlike Costco in the *Cloutier* case. F.L. Roberts cannot show the proof necessary under c. 151B to prevail on its "undue burden" defense, when it failed to engage in any conversation about Mr. Brown's request.   It cannot claim that its management discretion could not be exercised to allow Mr. Brown's religious practice, because it failed in any way to offer the exercise of discretion.  Perhaps it could have offered a transfer to a retail convenience store at comparable pay to Mr. Brown, where he would not have to shave.  Or F.L. Roberts could have offered Mr. Brown some "upper bay" job that would not have included sales or greeting.

---

4 The Full Commission affirmed the ruling of Commissioner Walter J. Sullivan, Jr., the initial hearing officer. *See, Marquez v. Massachusetts Bay Transportation Authority*, MCAD Docket No. 97-BEM-3223, 24 MDLR 197 (2002).
5 The Supreme Judicial Court has noted that it is not bound by interpretations of Title VII  in construing c. 151B, and given the paucity of state case law on "undue burden", the assumption of the Cloutier Appeals Court that the S.J.C. would use federal law as its guide may be misguided, given the MCAD's interpretation of "undue burden" analysis  in *Marquez. See, e.g., Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination*, 375

Offering no such proposal for accommodation means that F.L. Roberts failed the test mandated by the MCAD.  As a result, under state law, F.L. Roberts cannot meet its burden and a violation of c. 151B should be found.

### V.    <u>CONCLUSION</u>

For the reasons stated, summary judgment should enter for Mr. Brown on his claims of religious discrimination because of the defendant's failure to reasonably accommodate his religious practices.

I hereby certify that a
true copy of the above
document was served upon
counsel for the defendant,
by mail (by hand) on
_____.

_____

Date:_____

BOBBY BROWN
By his attorney,
 /s/ Joel Feldman
Joel Feldman
BBO # 552963
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

Mass. 160, 167 (1978) and *College-Town, Division of Interco, Inc. v. MCAD*, 400 Mass. 156, 163 (1987).