UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

DOCKET NO: 04 30105-MAP

BOBBY T. BROWN,
  Plaintiff

v.

F.L. ROBERTS and CO., INC. d/b/a
JIFFY LUBE,
  Defendant

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

1.    In December, 2001, F.L. Roberts & Co., Inc. (hereinafter "Roberts") informed its Jiffy
Lube employees that it had changed its policy concerning whether employees who had
customer contact could have facial hair.

**RESPONSE: Admit.**

2.    Prior to December, 2001, employees of Roberts at Jiffy Lube could have customer
contact and could also have facial hair.

**RESPONSE: Admit.**

3.    After December, 2001, employees of Roberts at Jiffy Lube could not have customer
contact if they chose to keep their facial hair.

**RESPONSE: The Defendant admits that its written Personal Appearance Policy effective
January 2002, states that "all customer – contact employees are expected to
be clean – shaven with no facial hair . . ." and that employees with facial hair
had limited customer contact after January 2002.  On a practical basis,
however, employees with facial hair have customer contact while working at
the Jiffy Lube since they move around the premises and leave the lower bay
for lunch and other breaks.**

4.    If an employee of Roberts at Jiffy Lube had facial hair after December, 2001, he/she had
to work only as a Lower Bay Tech.

**RESPONSE: Admit.**

257459-1

5.  Roberts' policy stated that a Jiffy Lube employee with a beard or other facial hair could only work as a Lower Bay Tech, as was stated in Roberts' employee handbook.

**RESPONSE:** **The Defendant admits that, after December 2001, employees with facial hair worked as lower bay technicians pursuant to Roberts' newly enacted policy but denies that the policy was stated as such in the handbook.**

6.  In December, 2001, Richard Smith was Vice-President of Operations Jiffy Lube/Car Wash for Roberts.

**RESPONSE: Admit.**

7.  In December, 2001, Richard Smith was present at Jiffy Lube employee meeting with Bobby Brown in Hadley, Massachusetts, when Roberts introduced its employee handbook.

**RESPONSE:** **The Defendant admits that Bobby Brown was present at a meeting for all Hadley, Massachusetts Jiffy Lube employees and that Richard Smith introduced the Roberts employee handbook.**

8.  At the December, 2001, meeting mentioned in Request 7, Bobby Brown asked Richard Smith if he could keep his beard and continue to have customer contact.

**RESPONSE: Denied.**

9.  At the December, 2001 meeting mentioned in Request 7, Richard Smith told Mr. Brown that Mr. Brown could keep his beard but he was limited to working as a Lower Bay Tech, in accordance with company policy.

**RESPONSE: Admit.**

10. After the December, 2001 meeting mentioned in Request 7, Richard Smith had a second meeting with Bobby Brown about the issue of Mr. Brown's facial hair.

**RESPONSE:** **The Defendant objects to Request No. 10 to the extent that it implies that Mr. Brown's facial hair was an issue at the general December 2001 employee meeting. The Defendant admits that Mr. Smith had a meeting with Mr. Brown regarding his facial hair subsequent to December 2001.**

11. At that second meeting mentioned in Request 10, Mr. Brown told Mr. Smith that Mr. Brown could not shave his beard because of his religious beliefs.

**RESPONSE: Admit.**

12. At that second meeting mentioned in Request 10, Mr. Brown told Mr. Smith that Mr. Brown was a Rastafarian.

**RESPONSE: Denied.**

13.   At that second meeting mentioned in Request 10, Mr. Smith told Mr. Brown believed that Jiffy Lube was discriminating against him by requiring him to work solely as a Lower Bay Tech unless he shaved his facial hair.

**RESPONSE: Defendant denies that Mr. Smith ever asked Mr. Brown to shave his facial hair, but admits that Mr. Brown had a second meeting with Mr. Smith wherein Mr. Smith told Mr. Brown that he could remain employed despite the new personal appearance policy by working as a Lower Bay Technician.**

14.   At that second meeting mentioned in Request 10, Mr. Brown told Mr. Smith that Jiffy Lube was discriminating against him.

**RESPONSE: The Defendant admits that Mr. Brown alleged discrimination at the second meeting.**

15.   At that second meeting mentioned in Request 10, Mr. Brown told Mr. Smith that Mr. Brown wanted to work other jobs than as a Lower Bay Tech and that he did not want to have to shave his beard.

**RESPONSE: Admit.**

16.   In response to Mr. Brown's telling Mr. Smith, at the second meeting mentioned in Request 10, that Mr. Brown did not want to shave his beard because of his religious practices, Mr. Smith reminded Mr. Brown that Mr. Brown could only work as a Lower Bay Tech if he did not shave, as stated in the employee handbook.

**RESPONSE: In response to Request No. 16, the Defendant admits that at some point in time, Mr. Smith told Mr. Brown that the Defendant was reasonably accommodating his religious practices by permitting him to remain employed despite the new Personal Appearance Policy. The Defendant denies all remaining allegations in Request No. 16.**

17.   The managers and assistant managers at Jiffy Lube in Hadley had received no training in anti-discrimination compliance (outside of sexual harassment) prior to December, 2001.

**RESPONSE: The Defendant objects to Request No. 17 inasmuch as it is overly broad, vague and fails to define "anti-discrimination compliance." Without waiving the objection, the information known or readily obtainable by the Defendant is insufficient to enable the Defendant to either admit or deny Request No. 17. The Defendant does not know whether all managers and assistant managers at Jiffy Lube received anti-discrimination training at anytime in their lives.**

18.   Richard Smith had received no training in anti-discrimination compliance (outside of sexual harassment) prior to December 2001.

**RESPONSE: The Defendant objects to Request No. 18 inasmuch as it is overly broad, vague and fails to define "training in anti-discrimination compliance".**

19.    Prior to December 30, 2001, neither Dr. Richard Smith nor the managers at Jiffy Lube in Hadley had received any training in compliance with federal and state law concerning religious discrimination or the concept of "reasonable accommodation" within the context of religious discrimination.

**RESPONSE:  The Defendant objects to Request No. 19 inasmuch as it is overly broad, vague and fails to define "training." Without waiving the objection, the information known or readily obtainable by the Defendant is insufficient to enable the Defendant to either admit or deny Request No. 19. The Defendant does not know whether all managers at Jiffy Lube received "training" "concerning religious discrimination or the concept of 'reasonable accommodation' within the context of religious discrimination."**

20.    After Bobby Brown complained about being discriminated against, and told Mr. Smith that he could not shave because of his religious beliefs, Roberts followed its company policy and allowed Mr. Brown only to work as a Lower Bay Tech, despite knowing Mr. Brown's preference for working with customers.

**RESPONSE:  The Defendant denies any knowledge regarding Mr. Brown's alleged "preference for working with customers," but admits that Mr. Brown was not exempted from complying with the Defendant's personal appearance policy.**

21.    When the Jiffy Lube/car wash division at Roberts changed its policy concerning employee facial hair in December, 2001 or thereabouts, the retail convenience division at Roberts, headed by Carol Voyik, did not change its policy and allowed its employees to retain their facial hair and have customer contact.

**RESPONSE:  The Defendant objects to Request No. 21 inasmuch as it requests information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks information relative to another entity or division by whom the plaintiff was not employed.**

22.    The restaurant owned by Roberts at the truck stop in Whately, Massachusetts did not change its policy concerning facial hair, and all employees at the restaurant, after December, 2001, could still have facial hair and maintain customer contact.

**RESPONSE:  The Defendant objects to Request No. 22 inasmuch as it requests information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks information relative to another entity or division by whom the plaintiff was not employed.**

23.    Roberts has had a policy of allowing reasonable accommodation if an employee requests a day off for religious worship on Sunday, at least from December, 2001 to the present, and the policy requires Roberts to give the employee the day off.

RESPONSE: The Defendant objects to Request No. 23 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objection,, the Defendant is not aware of any formal policy relative to accommodating an employee who requests a day off for religious worship on Sunday. To the best of my knowledge, such a request has never been made.

24.    When Roberts required Mr. Brown to work only as a Lower Bay Tech because he would not shave, it was following its stated policy, rather than providing Mr. Brown with an accommodation.

RESPONSE: Denied.

25.    Roberts did not change its policy towards Mr. Brown and his request for customer contact, even after receiving Mr. Brown's complaint filed at the Massachusetts Commission Against Discrimination.

RESPONSE: The Defendant denies that Mr. Brown requested "customer contact", but admits that Mr. Brown was not exempted from complying with the Defendant's personal appearance policy.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ⟋⟍O DAY OF MARCH, 2005.

RICHARD SMITH, Vice President, Operations
F.L. ROBERTS & CO., INC.

AS TO OBJECTIONS:

Claire L. Thompson, Esquire
BBO 550262
Doherty, Wallace, Pillsbury & Murphy, P.C.
One Monarch Place, Suite 1900
Springfield, MA 01144-1900
Tel: (413) 733-3111
Fax: (413) 734-3910

257459-1                                            5

## CERTIFICATE OF SERVICE

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P. on March _10_, 2005.

Claire L. Thompson, Esq.

257459-1                                    6