UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

DOCKET NO: 04 30105-MAP

BOBBY T. BROWN,
    Plaintiff

v.

F.L. ROBERTS and CO., INC. d/b/a
JIFFY LUBE,
    Defendant

DEFENDANT'S REPLY TO PLAINTIFF'S STATEMENT OF ALLEGED MATERIAL
FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.    Undisputed.

2.    Undisputed.

3.    The Defendant admits that Mr. Brown applied for and functioned in the capacity of lube technician both in the lower bay and upper bay during his tenure with Jiffy Lube. Mr. Brown was not hired as a greeter, salesman or cashier.

4.    The Defendant disputes the materiality of statement 4. The Defendant's new Personal Appearance Policy was based on its legitimate business need to maintain a professional public image consistent with the recommendations of its consultant, Power, Inc., not due to a particular customer complaint. (Affidavit of Richard Smith paragraphs 2, 3, 4.)

5.    The Defendant has no firsthand knowledge regarding Mr. Brown's religion but does not dispute his representation that he is a practicing Rastafarian.

6. The Defendant has no firsthand knowledge regarding the founding of the Rastafarian religion and/or the tenets of the religion but does not dispute the representations made in statement 6.

7. The Defendant has no firsthand knowledge regarding the tenets of the religion but does not dispute the representations made in statement 7.

8. Undisputed.

9. The Defendant has no firsthand knowledge regarding the tenets of the religion but does not dispute the representations made in statement 9.

10. The Defendant's new Personal Appearance Policy was effective January 2002, not December 2001. (Affidavit of Richard Smith paragraph 5.)

11. Undisputed.

12. It is undisputed the FL Roberts Personal Appearance Policy effective January 2002 required customer contact employees to be clean shaven; employees with facial hair who wished to remain employed by Jiffy Lube could do so without shaving by working as lower bay technicians. (Affidavit of Richard Smith paragraph 7 & 8.)

13. FL Roberts disputes the materiality of statement 13 since Mr. Brown never worked for any division of FL Roberts other than the Jiffy Lube division. The new Personal Appearance Policy effective January 2002 applied only to the Jiffy Lube and Golden Nozzle divisions managed by Mr. Smith. Other divisions of FL Roberts & Co., Inc. were not subject to the same policies adopted and implemented by Operations Manager, Richard Smith. (Affidavit of Richard Smith paragraphs 11 & 12.) The Plaintiff also does not raise allegations in his complaint regarding other divisions of FL Roberts & Co., Inc.. (See Plaintiff's Complaint.)

14. Richard Smith was the Vice President of Operations of the FL Roberts Car Wash and Jiffy Lube divisions, not an oil change division. (Deposition transcript of Richard Smith page 7.)

15. Mr. Smith was the Operations Manager of the Jiffy Lube and Car Wash divisions of FL Roberts & Co., Inc., not an "oil change" division. The new Personal Appearance Policy effective January 2002 required customer contact employees to be clean shaven. It did not prohibit employees from having facial hair. (Affidavit of Richard Smith paragraph 4.)

16. Mr. Smith recommended a new Personal Appearance Policy to Mr. Roberts. Mr. Roberts approved the change in policy for the Jiffy Lubes and Golden Nozzle Car Wash. (Affidavit of Richard Smith, paragraph 12.)

17. Mr. Smith discussed the new Personal Appearance Policy in a meeting with all staff, not just managers. (Affidavit of Richard Smith paragraph 5; Deposition transcript of Richard Smith page 113.)

18. FL Roberts disputes the materiality of statement 18 since Mr. Brown was never employed by the retail convenience store/gas station divisions of FL Roberts. The new Personal Appearance Policy effective January 2002 did not apply to the operational divisions of FL Roberts & Co., Inc. other than the Jiffy Lube and Golden Nozzle Car Wash divisions managed by Mr. Smith. (Affidavit of Richard Smith paragraphs 11 & 12.) The Plaintiff also does not raise allegations regarding any other division of FL Roberts & Co., Inc. in his complaint. (Plaintiff's Complaint.)

19. FL Roberts disputes the materiality of statement 19 since Mr. Brown was never employed by the retail convenience store division of FL Roberts & Co., Inc. and did

not work for Carol Voyik. The Plaintiff also did not raise allegations regarding other divisions in his complaint. (Plaintiff's Complaint.)

20. FL Roberts disputes the materiality of statement 20 since Mr. Brown did not work for Ms. Voyik or the retail convenience store division of FL Roberts & Co., Inc.. Ms. Voyik did not retain the consultant services of Power, Inc. and was not interested in changing her personal appearance policy. (Deposition transcript of John Borgatti page 19.) The Plaintiff also did not raise allegations regarding any other division in his complaint. (Plaintiff's Complaint.)

21. FL Roberts disputes the materiality of statement 21 since Mr. Brown never worked for a restaurant and truck stop owned by FL Roberts and does not raise any allegations in his complaint relative to divisions of FL Roberts & Co., Inc. other than Jiffy Lube. (Plaintiff's Complaint).

22. FL Roberts & Co., Inc. disputes the materiality of statement 22 since the Plaintiff has not raised any allegations in his complaint relative to any other divisions of FL Roberts & Co., Inc. other than the Jiffy Lube. The new Jiffy Lube Personal Appearance Policy effective January 2002 did not apply to any other divisions of FL Roberts & Co., Inc.. (Plaintiff's Complaint and Affidavit of Richard Smith paragraphs 11 & 12.)

23. FL Roberts & Co., Inc. disputes the materiality of statement 23 since the Plaintiff does not raise any allegations regarding any divisions of FL Roberts & Co., Inc. other than Jiffy Lube in his complaint. The new Personal Appearance Policy for Jiffy Lube effective January 2002 did not apply to any other divisions of FL Roberts & Co., Inc.. (Plaintiff's Complaint and Affidavit of Richard Smith paragraphs 11 & 12.)

24. When Mr. Brown was initially informed of the new Personal Appearance Policy, he spoke to Mr. Smith expressing his desire to maintain customer contact without shaving his beard.  He did not, however, reference his religious beliefs in that initial conversation.  Mr. Brown agreed to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician.  In a subsequent meeting in 2002, Mr. Brown alleged that he was being discriminated against based on his religion. (Affidavit of Richard Smith paragraphs 7 & 8.)

25. Mr. Brown initially told Assistant Manager, Brian Fuller, that he would not sign the New Hire Packet which included the new Personal Appearance Policy.  Mr. Brown later spoke to Mr. Smith without referencing his religious beliefs and agreed to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician.  (Affidavit of Richard Smith paragraphs 6, 7 & 8.)

26. Mr. Smith notified Mr. Fuller and all other employees that customer contact employees must be clean shaven pursuant to the new Personal Appearance Policy.  If Mr. Brown and other individuals with facial hair wished to remain employed by Jiffy Lube without shaving their facial hair, they could do so by working as lower bay technicians.  (Affidavit of Richard Smith paragraphs 6 & 7.)

27. The meeting referenced in statement 27 occurred prior to institution of the new Personal Appearance Policy which did not become effective until January 2002. (Affidavit of Richard Smith paragraphs 6, 7 & 8.)

28. When Mr. Brown initially spoke to Mr. Smith about the new Personal Appearance Policy, he did not reference his religious beliefs.  Mr. Brown agreed to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician.  In a subsequent meeting in 2002, Mr. Brown alleged that he was being

discriminated against based on his religion. (Affidavit of Richard Smith paragraphs 7 & 8.)

29. FL Roberts & Co., Inc. agrees that Mr. Brown told Mr. Smith that he did not want to shave his facial hair because of his religious beliefs after initially agreeing to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician. (Affidavit of Richard Smith paragraphs 7 & 8.)

30. FL Roberts & Co., Inc. agrees that Mr. Brown told Mr. Smith that he did not want to shave his facial hair because of his religious beliefs after initially agreeing to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician. (Affidavit of Richard Smith paragraphs 7 & 8.)

31. When Mr. Brown initially spoke to Mr. Smith about the new Personal Appearance Policy, Mr. Brown agreed to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician. Mr. Brown later changed his mind and stated that he did not want to work exclusively in the lower bay and that he believed that he was being discriminated against based on his religion. (Affidavit of Richard Smith paragraphs 7 & 8.)

32. FL Roberts & Co., Inc. agrees that Mr. Brown told Mr. Smith that he did not want to shave his facial hair because of his religious beliefs after initially agreeing to remain employed at Jiffy Lube without shaving his facial hair by working as a lower bay technician. (Affidavit of Richard Smith paragraphs 7 & 8.)

33. Undisputed.

34. Jiffy Lube's new Personal Appearance Policy, a copy of which is attached as Exhibit A to the Affidavit of Richard Smith, states that "all customer contact employees are expected to be clean shaven with no facial hair . . . any employee who does not meet

the standards of this policy will be required to take corrective action, which may including leaving the premises . . ..” (Affidavit of Richard Smith paragraphs 4 & 5 and Exhibit A to Affidavit of Richard Smith.)

35. Jiffy Lube's new Personal Appearance Policy, a copy of which is attached as Exhibit A to the Affidavit of Richard Smith, states that "all customer contact employees are expected to be clean shaven with no facial hair . . . any employee who does not meet the standards of this policy will be required to take corrective action, which may include leaving the premises . . .." (Affidavit of Richard Smith paragraphs 4 & 5 and Exhibit A to Affidavit of Richard Smith.)

36. Mr. Brown was never required to continue his employment with Jiffy Lube. In the event that Mr. Brown chose to remain employed by Jiffy Lube without shaving his facial hair, he could do so by working as a lower bay technician effective January 2002. Mr. Brown was terminated in May 2002 for using vulgar language and making threatening statements to coworkers in the presence of customers. (Affidavit of Richard Smith paragraphs 7, 8, & 10.)

37. FL Roberts & Co., Inc. accommodated Mr. Brown and other employees with facial hair by permitting them to remain employed by Jiffy Lube, working as a lower bay technician subsequent to the effective date of the new Personal Appearance Policy in January 2002.

38. FL Roberts & Co., Inc. accommodated Mr. Brown's need to maintain his facial hair while remaining employed by Jiffy Lube despite its policy that "Radical departures from conventional dress or personal grooming and hygiene standards [were] not permitted." (Affidavit of Richard Smith paragraphs 7 &8 and Exhibit A to Affidavit of Richard Smith.)

39. FL Roberts & Co., Inc. accommodated Mr. Brown and other employees with facial hair by permitting them to remain employed by Jiffy Lube, working as a lower bay technician subsequent to the effective date of the new Personal Appearance Policy in January 2002. FL Roberts & Co., Inc. has no knowledge relative to whether Mr. Brown referred to the lower bay as "the hole". FL Roberts & Co., Inc. further disputes the materiality of this portion of statement 39. (See Affidavit of Richard Smith paragraph 9.)

40. FL Roberts & Co., Inc. disputes the materiality of statement 40 and has no firsthand knowledge relative to whether Mr. Brown referred to the lower bay as a "hole" or found "conditions [to be] much worse" in the lower bay. Mr. Brown worked for several years, intermittently, as a lower bay technician prior to January 2002. The job responsibilities for an upper bay lube technician (UBLT) and a lower bay technician (LBLT) are virtually identical except the technicians work on different parts of the motor vehicle. The UBLT and the LBLT have constant contact and communication with each other to properly service the customers and their vehicles. Both positions carry the same levels of responsibility. Mr. Brown's hourly rate was increased in January 2002 at the same time that he transferred from a UBLT to an LBLT position. (See Affidavit of Richard Smith paragraph 9.)

41. FL Roberts & Co., Inc. disputes statement 41 and states that Mr. Brown worked for several years, intermittently, as a lower bay technician prior to January 2002. The job responsibilities for an upper bay lube technician (UBLT) and a lower bay technician (LBLT) are virtually identical except the technicians work on different parts of the motor vehicle. The UBLT and the LBLT have constant contact and communication with each other to properly service the customers and their vehicles. Both positions

carry the same levels of responsibility. Mr. Brown's hourly rate was increased in January 2002 at the same time that he transferred from a UBLT to an LBLT position. (See Affidavit of Richard Smith paragraph 9.)

42. FL Roberts & Co., Inc. disputes the materiality of statement 42 and further states that Mr. Brown never notified FL Roberts & Co., Inc. of the injuries alleged in statement 42. Mr. Brown worked for several years, intermittently, as a lower bay technician prior to January 2002. The job responsibilities for an upper bay lube technician (UBLT) and a lower bay technician (LBLT) are virtually identical except the technicians work on different parts of the motor vehicle. The UBLT and the LBLT have constant contact and communication with each other to properly service the customers and their vehicles. Both positions carry the same levels of responsibility. Mr. Brown's hourly rate was increased in January 2002 at the same time that he transferred from a UBLT to an LBLT position. (See Affidavit of Richard Smith paragraph 9.)

43. FL Roberts & Co., Inc. admits that Mr. Brown was not rotated to any other jobs subsequent to the effective date of the new Personal Appearance Policy and consistent with that policy but disputes all remaining allegations in statement 43. (Affidavit of Richard Smith.)

44. FL Roberts & Co., Inc. disputes statement 44 and states that it accommodated Mr. Brown's request to remain employed without shaving his facial hair. (See Affidavit of Richard Smith paragraphs 7 & 8.)

45. FL Roberts & Co., Inc. new Personal Appearance Policy effective January 2002 was not instituted to prevent customers from seeing the facial hair of employees. It was instituted, based on the advice of Jiffy Lube's consultant, to increase Jiffy Lube's

business by enhancing its professional public image.  Mr. Brown and other lower bay technicians certainly move around the premises for lunch and smoking breaks and do have incidental customer contact.  (See Affidavit of Richard Smith paragraphs 2, 3, 8 & 10.)

46. FL Roberts & Co., Inc. disputes the materiality of statement 46 and has no firsthand knowledge with which to reply to that statement.

47. FL Roberts & Co., Inc. disputes the materiality of statement 47 and has no firsthand knowledge with which to reply to that statement.

DATED: June 3, 2005

F.L. ROBERTS & CO., INC.
D/B/A JIFFY LUBE
BY ITS ATTORNEY,

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P. on June 3, 2005

   */s/ Claire L. Thompson*
_____
Claire L. Thompson, Esq.

   */s/ Claire L. Thompson*
Claire L. Thompson, Esquire
Doherty, Wallace, Pillsbury
  & Murphy, P.C.
One Monarch Place, Suite 1900
Springfield, MA 01144-1900
Tel:  (413) 733-3111
Fax:  (413) 734-3910