UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

DOCKET NO: 04 30105-MAP

| | |
|---|---|
| BOBBY T. BROWN,<br>    Plaintiff<br><br>v.<br><br>F.L. ROBERTS and CO., INC. d/b/a<br>JIFFY LUBE,<br>    Defendant | |

STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. The Plaintiff, Bobby T. Brown ("Mr. Brown"), was employed by Jiffy Lube of Hadley, Massachusetts intermittently from 1999 through May 22, 2002 in the position of lube technician. He was rehired on or about July 13, 2001 for the position of lube technician. (See Exhibit A of Affidavit of Claire L. Thompson.) Mr. Brown requested no religious accommodations within his application. (See Exhibit A, Page 3 of Affidavit of Claire L. Thompson)

2. Mr. Brown functioned both as a lower bay lube technician (LBLT) and as an upper bay lube technician (UBLT) throughout his tenure with Jiffy Lube. The job responsibilities for an UBLT and a LBLT are virtually identical except the technicians work on different parts of the motor vehicle. (Affidavit of Richard Smith, paragraph 9 and Exhibit B to Affidavit of Richard Smith) The UBLT and the LBLT have constant contact and communication with each other to properly service the customers and their vehicles. Both positions carry the same level of responsibility. (Affidavit of Richard Smith paragraph 9.)

270840.1

3.  Mr. Brown began earning an hourly rate of $8.00 per hour in July 2001 and received a merit increase to $9.00 per hour effective January 6, 2002. (Affidavit of Richard Smith, paragraph 9 and Exhibit C to Affidavit of Richard Smith)

4.  Richard Smith ("Mr. Smith") was hired as Vice President of Operations of FL Roberts & Co., Inc. Jiffy Lube division on or about August 2001 when he began overseeing the day-to-day operations of the Jiffy Lubes. (Affidavit of Richard Smith, paragraph 1.)

5.  When Mr. Smith was hired for the position in 2001, one of his goals was to increase Jiffy Lube's sales figures by attracting new customers and enhancing Jiffy Lube's professional public image. Mr. Smith retained the services of Power, Inc. to consult to Jiffy Lube and assist in the development and implementation of strategies and policies to increase Jiffy Lube's business. (Affidavit of Richard Smith, paragraph 2.)

6.  Steve Gaudreau of Power, Inc. ("Mr. Gaudreau") presented research and statistical data indicating that retail establishments with a "clean shaven Personal Appearance Policy" are more successful than those without such a policy because a significant segment of the consuming public prefers to interact with retail employees who have a more conventional appearance. Mr. Gaudreau stated to Mr. Smith that Jiffy Lube needed to "make some drastic changes", including adopting a clean shavenness policy to attract and maintain customers in the retail market. (Affidavit of Richard Smith paragraph 3)

7.  Prior to Mr. Smith assuming the Director of Operations position, Jiffy Lube permitted customer-contact employees to have facial hair. Based on the recommendations of Jiffy Lube's consultant, Power, Inc., Mr. Smith decided to adopt a new Personal Appearance Policy requiring customer-contact employees to be clean-shaven and to have hair that is clean, combed and neatly trimmed or arranged. "Radical departures from conventional

        dress or personal grooming and hygiene standards" would no longer be permitted. (Affidavit of Richard Smith, paragraph 4; Exhibit A to Affidavit of Richard Smith.)

8. Mr. Smith met with the employees at each of the Jiffy Lubes, including the Hadley Jiffy Lube, where Mr. Brown was employed in December 2001, to discuss and distribute Jiffy Lube's new Employee Handbook which included the Personal Appearance Policy (page 19 of the Handbook). The new policy became effective in January 2002. (Affidavit of Richard Smith paragraph 5; Exhibit A of Affidavit of Richard Smith.)

9. Mr. Brown and other employees were given Jiffy Lube's new Employee Handbook and Hire Packet in December 2001. Mr. Brown initially told Manager Warren Spears and Assistant Manager Brian Fuller that he would not sign the Hire Packet. Mr. Spears and Mr. Fuller told Mr. Brown that he would have to speak to Mr. Smith about the new policy. (Affidavit of Richard Smith, paragraph 6.)

10. Mr. Brown then asked Mr. Smith if he could still remain employed at Jiffy Lube without shaving his beard. He did not reference his religious beliefs in that initial conversation. Mr. Smith told Mr. Brown that he and all other employees with facial hair could remain employed at Jiffy Lube without shaving their beards and mustaches by working as lower bay technicians. Mr. Brown agreed to that accommodation. (Affidavit of Richard Smith, paragraph 7.)

11. In addition to Mr. Brown, Michael Banas, Scott Morin and Steve Lafreniere all decided to maintain their facial hair and work as lower bay technicians. Mr. Brown and other employees with facial hair were not required to work in the lower bay; they were free to leave the Defendant's employ or apply for a different position. In a subsequent meeting in 2002, Mr. Brown alleged that he was being discriminated against based on his religion. (Affidavit of Richard Smith, paragraph 8.)

12.   Mr. Brown's hourly rate did not change or decrease by virtue of his transfer from an UBLT to a LBLT. Mr. Brown actually received a Merit Increase from $8.00 per hour to $9.00 per hour effective January 6, 2002. (Affidavit of Richard Smith paragraph 9, and Exhibit C to Affidavit of Richard Smith).

13. Mr. Brown's employment was terminated on May 22, 2002 for his conduct in using vulgar and threatening language with coworkers in front of customers. Mr. Brown certainly left the lower bay area when there were no vehicles to work on, and for lunch and smoke breaks. In fact, when he was terminated, he was in the customer service area causing a disruption and swearing in the presence of Jiffy Lube customers. (Affidavit of Richard Smith, paragraph 10.)

14. Jiffy Lube is only one of the entities or operational divisions owned by FL Roberts & Co., Inc.. Other divisions include the Golden Nozzle Car Washes which Mr. Smith manages, and gas stations, a diner, and a hotel, each of which is managed by a separate Operations Manager and governed by its own employee handbook and policies developed by the individual Operations Managers. (Affidavit of Richard Smith, paragraph 11.)

15. The Personal Appearance Policy which applies to one division does not necessarily apply to another. When Mr. Smith was hired to be Operations Manager of the Jiffy Lube in 2001, he decided to change the Personal Appearance Policy for Jiffy Lube based on the advice of Power, Inc.. Mr. Smith also changed the Personal Appearance Policy for Golden Nozzle Car Washes which he managed. To Mr. Smith's knowledge, the other divisions of FL Roberts & Co., Inc. did not consult with Power, Inc. regarding their policies. FL Roberts & Co., Inc.'s owner, Steven Roberts, approved changes in the Personal Appearance Policies for Jiffy Lube and the Golden Nozzle Car Washes. The other divisions of FL Roberts & Co., Inc. were not subject to the same policies that Mr.

Smith adopted and implemented.  Each Division Manager developed and implemented his or her own employee handbook and Personal Appearance Policies.  The Personal Appearance Policy that Mr. Smith adopted in 2001 did not apply to other divisions or entities owned by FL Roberts & Co., Inc. which he did not manage.  (Affidavit of Richard Smith, paragraph 12.)

16. The new Personal Appearance Policies which Mr. Smith implemented for Jiffy Lube and Golden Nozzle Car Wash were successful.  Sales figures increased from 2001 to 2002.  (Affidavit of Richard Smith paragraph 13.)

DATED: June 3, 2005

F.L. ROBERTS & CO., INC.
D/B/A JIFFY LUBE
BY ITS ATTORNEY,

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P. on June 3, 2005

   */s/ Claire L. Thompson*
_____
Claire L. Thompson, Esq.

   */s/ Claire L. Thompson*
Claire L. Thompson, Esquire
Doherty, Wallace, Pillsbury
   & Murphy, P.C.
One Monarch Place, Suite 1900
Springfield, MA 01144-1900
Tel:  (413) 733-3111
Fax:  (413) 734-3910

270840.1                                   5