UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

DOCKET NO: 04 30105-MAP

BOBBY T. BROWN,
    Plaintiff

v.

F.L. ROBERTS and CO., INC. d/b/a
JIFFY LUBE,
    Defendant

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

FACTUAL BACKGROUND[1]

The Plaintiff Bobby T. Brown ("Mr. Brown") was employed by Jiffy Lube for several years intermittently as a lower bay lube technician (LBLT) and an upper bay lube technician (UBLT) from 1999 through his termination on May 22, 2002. He was last rehired for the position of lube technician in July 2001 at the Hadley Jiffy Lube. (Affidavit of Claire L. Thompson, Exhibit A) Jiffy Lube is only one of the entities or operational divisions owned by the Defendant F.L. Roberts and Company, Inc. Other divisions include the Golden Nozzle Car Washes, gas stations, a diner, and a hotel. The Jiffy Lube and Golden Nozzle Car Wash divisions are managed by Vice President of Operations Richard C. Smith ("Mr. Smith"). All other divisions of F.L. Roberts and Company, Inc. are managed separately by different division

---

[1] The facts in this section of the memorandum are found in the Defendants' Statement of Material Facts in Support of Defendants' Motion for Summary Judgment and supporting exhibits.

270845.1

managers. Each division manager developed and implemented his or her own employee handbook with separate Personal Appearance Policies for its employees.

When Mr. Smith was hired to manage the Jiffy Lube division of F.L. Roberts and Company, Inc. in 2001, one of his goals was to increase Jiffy Lube's sales figures by attracting new customers and enhancing Jiffy Lube's professional public image. To that end, Mr. Smith retained the services of Power, Inc. to consult to Jiffy Lube and assist in the development and implementation of strategies and policies to increase Jiffy Lube's business.

Steve Gaudreau of Power Inc. ("Mr. Gaudreau") presented research and statistical data to Mr. Smith indicating that retail establishments with a "clean-shaven personal appearance policy" are more successful than those without such a policy because a significant segment of the consuming public prefers to interact with retail employees who have a more conventional appearance. Mr. Gaudreau indicated that Jiffy Lube needed to "make some drastic changes", including adopting a clean-shavenness policy to attract and maintain customers in the retail market.

Prior to Mr. Smith assuming the Director of Operations position, Jiffy Lube permitted customer-contact employees to have facial hair. Based on the recommendations of Mr. Gaudreau of Power Inc., Mr. Smith decided to adopt a new Personal Appearance Policy requiring customer-contact employees to be clean-shaven and to have hair that is clean, combed and neatly trimmed or arranged. "Radical departures from conventional dress or personal grooming and hygiene standards" would no longer be permitted (Exhibit A to Affidavit of R. Smith).

Mr. Smith met with the employees at each of the Jiffy Lubes, including the Hadley Jiffy Lube where Mr. Brown was employed in December 2001. Mr. Smith discussed and distributed

Jiffy Lube's new employee handbook which included a new Personal Appearance Policy on page 19 of the handbook. He explained that the new policy would become effective in January 2002.

Mr. Brown and other employees were given a copy of Jiffy Lube's new Employee Handbook and Hire Packet in December 2001. Mr. Brown initially told manager Warren Spears and assistant manager Brian Fuller that he would not sign the new hire packet and policy. Mr. Spears and Mr. Fuller told Mr. Brown that he would have to speak to Mr. Smith about the new policy. Mr. Brown then asked Mr. Smith if he could remain employed at Jiffy Lube without shaving his beard. At that time, Mr. Brown did not reference his religious beliefs.

Mr. Smith told Mr. Brown that he and all other employees with facial hair could remain employed at Jiffy Lube without shaving their beards and mustaches by working as lower bay technicians. Mr. Brown agreed to that accommodation and indicated that he would work as a lower bay technician. In addition to Mr. Brown, Michael Banas, Scott Morin, and Steve Lafreniere all decided to maintain their facial hair and work as lower bay technicians. Mr. Brown and other employees with facial hair were not required to work in the lower bay; they were free to leave the Defendant's employ or apply for a different position. All chose to maintain their employment with Jiffy Lube.

It was not until a subsequent meeting in 2002 that Mr. Brown alleged to Mr. Smith that Jiffy Lube was discriminating against him based on his religion as a Rastafarian. He indicated that he did not enjoy working in the lower bay and asked to be exempted completely from the new personal appearance policy. Mr. Smith denied that request and indicated that he believed that Mr. Brown's request had been reasonably accommodated but he could not completely exempt him from the policy based on the recommendations of Power Inc.

Moreover, Mr. Brown had served in the capacity of lower bay lube technician for several years prior to 2002. The job responsibilities for an UBLT and a LBLT are virtually identical except the technicians work on different parts of the motor vehicle. The UBLT and the LBLT have constant contact and communication with each other to properly service the customers and their vehicles. Both positions carry the same levels of responsibility. Mr. Brown's hourly rate did not change by virtue of his transfer from an UBLT to a LBLT. Mr. Brown actually received a merit increase from $8.00 per hour to $9.00 per hour effective January 6, 2002.

Mr. Brown's employment was later terminated on May 22, 2002 for his conduct in using vulgar and threatening language with coworkers in front of customers. Mr. Brown had frequent opportunities to leave the lower bay area, despite his new assignment, when there were no vehicles to work on and for lunch and smoke breaks. In fact, when he was terminated, Mr. Brown was in the customer service area causing a disruption and swearing in the presence of Jiffy Lube customers.

Mr. Brown claims in his memorandum in support of summary judgment that employees of other F.L. Roberts and Company, Inc.'s divisions were allegedly exempted from the new Personal Appearance Policy. Mr. Brown's argument is misplaced. The only divisions for which the new Personal Appearance Policy applied were those managed by Mr. Smith – Jiffy Lube and Golden Nozzle Car Washes – based on the recommendations of Power Inc. The divisions managed by individuals other than Mr. Smith were governed by their own Employee Handbook and Personal Appearance Policies. Those divisions were not subject to the same policies adopted and implemented by Mr. Smith. Mr. Smith's new Personal Appearance Policies were successful; sales figures increased from 2001 to 2002.

This matter is currently before the Court on the Plaintiff's Motion for Summary Judgment alleging that the Defendant failed to reasonably accommodate Mr. Brown's religious beliefs by not permitting him to maintain customer contact despite Jiffy Lube's new Personal Appearance Policy.  In point of fact, however, what Mr. Brown sought was not a reasonable accommodation, but an outright exemption from the new Personal Appearance Policy.  F. L. Roberts was not legally obligated to grant such an exemption.

This case is also before the Court on the Defendant's Motion for Summary Judgment, arguing that the accommodation granted to Mr. Brown was, indeed, reasonable.  The exemption requested by Mr. Brown would have resulted in an undue hardship to the Jiffy Lube division of F.L. Roberts and Company, Inc.  The Defendants' position in this case is analogous to that of Costco Wholesale in the case of *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190 (D. Mass. 2004) *affirmed on separate grounds,* 390 F. 3d 126 (1st Cir. 2004).

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where there is no genuine issue of material fact and, where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* Mass. R. Civ. P. 56(c), *Attorney General v. Bailey*, 386 Mass. 367, 370 (1982). The moving party bears the affirmative burden to demonstrate both the absence of a triable, factual issue, and that, as a matter of law, he is entitled to judgment in his favor.  *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989).

In considering a motion for summary judgment, the Court must draw all inferences from the underlying facts in a light most favorable to the party opposing the motion, and should assume all facts favorable to the non-moving party. *See O'Gorman v. Antonio Rubinaccio & Sons, Inc.*, 408 Mass. 758, 759 (1990); *Bailey*, 386 Mass. at 372.  All doubt as to the existence of

a genuine issue of material fact must be resolved against the party moving for summary judgment. *Bailey*, 386 Mass. at 371, citing *Gross v. Southern Ry.*, 414 F.2d 292, 297 (5th Cir. 1969). The Court does not "pass upon the credibility of witnesses or the weight of the evidence (or) make (its) own decision of facts." *Id.* at 370, citing *Hub Associates v. Goode*, 357 Mass. 449, 451 (1970). Instead, the court must only "determine whether a genuine issue of material fact exist(s)." *Id.*, citing *H&M Cake Box, Inc. v. Bakery & Confectionery Workers, Int'l Union, Local 45*, 454 F.2d 716, 719 (1st Cir. 1972).

## DISCUSSION

Mr. Brown claims employment related religious discrimination in violation of Title VII of the Civil Rights Act of 1964 and Mass. General Laws Chapter 151B §4(1A). It is Mr. Brown's burden to establish that he was discriminated against based on the employer's alleged failure to accommodate his religious beliefs. *Cloutier v. Costco Wholesale, Corp.*, 390 F.3d 126 (1st Cir. 2004). The Plaintiff must demonstrate that (1) a bona fide religious practice is in conflict with an employment requirement; (2) the conflict was brought to the employer's attention; and (3) an adverse employment decision resulted from the conflict. *Id.* Assuming that the Plaintiff satisfies his burden, the Defendant must show "that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship". *Id.*

**I.      The Plaintiff has Failed to Satisfy His Burden of Proof Under Title VII.**

The Plaintiff has not demonstrated that a bona fide religious practice is in conflict with an employment requirement. Mr. Brown asserts that his religious beliefs conflict with the Defendant's alleged "No Beard" policy at Jiffy Lube. In point of fact, Jiffy Lube has never enacted a "No Beard" policy. Rather, Jiffy Lube's new Personal Appearance Policy states that

> "All customer contact employees are expected to be clean-shaven with no facial hair. ... Hair should be clean, combed, and neatly trimmed or arranged. Radical departures from conventional dress or personal grooming and hygiene standards are not permitted."

Jiffy Lube has never required Mr. Brown, or any other employee, to shave their beards in order to maintain employment.

At all times, Mr. Brown maintained both his beard and his job. Unlike a waiter or a cashier, it was possible for Mr. Brown to perform his job without direct customer contact. Only the physical location where Mr. Brown performed the majority of his job responsibilities changed: a location where Mr. Brown was required to work *before* the implementation of the new Personal Appearance Policy and Employee Handbook revisions. Mr. Brown successfully performed his job in the lower lube bay for years, without complaint, while also adhering to his religious practices. There was never a conflict between Mr. Brown's religious practices and Jiffy Lube's employment requirements. But for Mr. Brown's highly inappropriate conduct on May 22, 2002 of using vulgar language and threatening his coworkers in the presence of customers, he would still be employed by Jiffy Lube.

Jiffy Lube does not dispute that Mr. Brown has a sincerely held religious belief in maintaining his facial hair. When Mr. Brown reapplied for the position of lube technician in July 2001, however, he completed an application wherein he requested the position of lube technician without the need for any religious accommodations. See Exhibit A to Affidavit of Claire L. Thompson. Mr. Brown was indeed hired for the job of lube technician and remained in that position until his termination on May 22, 2002. The job responsibilities for an upper bay lube technician and a lower bay lube technician are virtually identical except the technicians work on different parts of the motor vehicle. See Affidavit of R. Smith. The UBLT and the LBLT have

270845.1                                    7

constant contact and communication with each other to properly service the customers and their vehicles. Both positions carry the same levels of responsibility. See Affidavit of R. Smith

Mr. Brown notified Operations Manager, Mr. Smith, of his religious practices sometime in 2002 after the effective date of the new Personal Appearance Policy. Mr. Smith reasonably accommodated Mr. Brown's religious practices by permitting him to remain employed in the same position for which he applied in July 2001 – that of lube technician. See Affidavit of R. Smith. Mr. Brown's religious practices were not in any way compromised by Jiffy Lube's employment conditions.

Mr. Brown was not subjected to any form of adverse employment action based on his religious practices as alleged in the Plaintiff's Memorandum in Support of Summary Judgment. At no time was Mr. Brown required to shave his beard nor were his essential duties altered. He continued to function as a technician on vehicles by performing the essential functions of a lube technician. The lube technician job description does not include any fundamental "right" to engage in customer contact. See Exhibit B to Affidavit of R. Smith. As such, Plaintiff's rights have not in any way been violated by Jiffy Lube's Employee Handbook revisions.

Moreover, Mr. Brown's hourly rate did not change or decrease by virtue of his transfer from an upper bay lube technician to a lower bay lube technician. He actually received a merit increase from $8.00 per hour to $9.00 per hour effective January 6, 2002, after implementation of the new Personal Appearance Policy. See Exhibit C to Affidavit of R. Smith. On a practical level, Mr. Brown continued to maintain some level of customer contact since he was free to leave the lower bay area when there were no vehicles to work on, and for lunch and smoke breaks. In fact, when he was terminated, he was in the customer service area causing a disruption and swearing in the presence of Jiffy Lube customers. See Affidavit of R. Smith.

Quite simply, there was no compromise of Mr. Brown's religious practices and no adverse employment action taken on the basis of Mr. Brown's religious practices as a result of the Employee Handbook revisions. Accordingly, Mr. Brown has failed to establish a prima facie Title VII claim and the Plaintiff's Motion for Summary Judgment should be denied.

Similarly, the Plaintiff's claim fails under the state statute, Mass. General Laws Chapter 151B §4, and case law interpreting the Legislature's intent in enacting the state anti-discrimination statute. Employers are required to "reasonably accommodate" the known religious practices of its employees unless the accommodations requested present an undue hardship. Mass. General Laws Chapter 151B §4(1A); *Cloutier v. Costco Wholesale, Corp.*, 390 F.3d 126 (1st Cir. 2004). A "reasonable accommodation is one that does not "cause undue hardship in the conduct of the employer's business." *Id.* As discussed above, Jiffy Lube did not violate Mr. Brown's religious beliefs in enacting the new Personal Appearance Policy. Further, Jiffy Lube did, in fact, reasonably accommodate Mr. Brown's religious practices.

**II.      Jiffy Lube Reasonably Accommodated the Plaintiff's Religious Practices.**

Assuming *arguendo* that this Court finds that the Plaintiff has met his burden of proof by demonstrating that an employment requirement was in conflict with his religious practices, Jiffy Lube's accommodation permitting Mr. Brown to maintain his beard and remain employed with a minimum of customer contact was reasonable. As the U.S. District Court stated in the *Cloutier* case, "[i]t is important to underline that the search for a reasonable accommodation goes both ways. Although the employer is required under Title VII and Mass. General Laws Chapter 151B to accommodate an employee's religious beliefs, the employee has a duty to cooperate with the employer's good faith efforts to accommodate." *Cloutier v. Costco Wholesale*, 311 F.Supp. 2d

190, 198 (D. Mass., 2004) quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 506 & n.30 (5th Cir. 2001).

In this case, Jiffy Lube accommodated employees who were opposed to shaving by allowing them to maintain their positions with minimal customer contact. Mr. Brown both kept his prior position as a lube technician and wore his beard without alteration. Mr. Brown initially agreed to the accommodation but later claimed that he was being harmed as a result of the lack of customer contact. The "customer contact", while enjoyed by Mr. Brown, is not a "right" afforded to employees at Jiffy Lube.

Since an accommodation is a "two-way street", the Court must assess what compromise, if any, Mr. Brown is willing to make in regards to his employer's legitimate business interest. According to Mr. Brown, working in the lower bay with minimal customer contact is a violation of Title VII. Presumably, the only solution acceptable to Mr. Brown is to maintain the status quo prior to the Employee Handbook revisions. Mr. Brown states in his memorandum that "Rather than finding some middle ground, or taking even one step back from its policy, FL Roberts & Co., Inc. followed the policy to the letter". The Plaintiff appears to be asserting that the only legally recognized "accommodation" is one where the employer deviates completely from its uniformly applied policy. Maintaining the status quo in this case is not, however, a compromise or "some middle ground" on the part of the Plaintiff.

Plaintiff argues, in effect, that a reasonable accommodation was not granted in this case because Jiffy Lube did not "bend" its policy. The test for what constitutes a reasonable accommodation is not, however, based on how far an employer is willing to deviate from its written policy but, rather, on whether or not an employer has made a reasonable accommodation to its employee's religious beliefs.

270845.1                                                  10

Let's suppose, hypothetically, that Jiffy Lube's Personal Appearance Policy stated that "No employee may have a beard." Suppose further that, after a request by the plaintiff, Jiffy Lube allows Mr. Brown to work the lower bay with a beard in direct violation of the written employment policy. In that circumstance, Jiffy Lube would have taken "some middle ground" and not "followed the policy to the letter." Mr. Brown would, however, be in the same position under this hypothetical as he is in the instant case. The deviation from the policy is not the focal point; the reasonableness of the accommodation is the proper target for discussion. Consistent with the *Coutier* and *Daniels* cases cited above, the employee has a duty to cooperate with the employer's good-faith efforts to accommodate. *Cloutier v. Costco Wholesale*, 311 F.Supp. 2d 190, 198 (D. Mass., 2004) quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 506 & n.30 (5th Cir. 2001).

Jiffy Lube has compromised its desire for all employees to be clean shaven with a solution that was tailored to permit Mr. Brown to adhere to his religious practices and remain employed while also minimizing the adverse effect imposed on Jiffy Lube consistent with the research of its consultant, Power, Inc. Jiffy Lube's "accommodation" was made a part of the new Personal Appearance Policy and the handbook revisions. Rather than reach a compromise, Mr. Brown steadfastly asserts that minimizing his contact with customers is a per se Title VII violation.

Assuming, once again, for the sake of argument, that this Court finds that Mr. Brown's job position did change by working in the lower bay, the new job description, in and of itself, does not make the accommodation unreasonable. See *Bhatia v. Chevron USA, Inc.*, 734 F.2d 1382, 1383 (9th Cir. 1984). In *Bhatia*, employer Chevron refused to maintain Mr. Bhatia's employment as a machinist. Chevron refused Mr. Bhatia's request because his beard prevented

safe and effective use of a gas tight respirator.  The Court, deciding in favor of Chevron, noted "Chevron then actively sought an alternative job for Bhatia and offered him four different positions."  *Id.* at 1383.  Mr. Brown, like Mr. Bhatia, was offered a way to both maintain his facial hair and the lube technician position for which he had applied.

In light of the fact that Mr. Brown's religious practices were not modified as a result of the Employee Handbook revisions and that Plaintiff maintained his job and salary, Jiffy Lube's accommodation was most certainly reasonable.  To find otherwise would be to require Jiffy Lube to provide an outright exemption to its Personal Appearance Policy.

### III    Mr. Brown Seeks an "Exemption" Rather Than an "Accommodation" to Jiffy Lube's Policy.

What Mr. Brown is requesting is an outright exemption from the facial hair employment policy.  As such, Mr. Brown's request is an undue hardship on Jiffy Lube.  In *EEOC v. Sambo's of Georgia*, 530 F.Supp. 86, 90, (D. GA., 1981) the Court stated,

> EEOC's demand that the defendants "accommodate" Mr. Tucker by permitting him to serve as a restaurant manager without trimming his facial hair at all is in fact not a demand for accommodation but a demand for outright exemption.  Even assuming that Sambo's could lawfully be required to modify its grooming standards to permit closely-cropped facial hair, Mr. Tucker nevertheless could not comply.  His religion would not permit him to trim his beard or mustache at all, nor would it permit him to cut his hair or dispense with the headwear that restrains and covers his uncut hair and beard.

The exemption status of Mr. Brown's request constitutes an undue burden for Jiffy Lube.

The Plaintiff alleges in his memorandum that Jiffy Lube's defense "must fail" because "FL Roberts & Co., Inc. has exempted its largest division from its Personal Appearance code".  This is a misstatement of fact.  All divisions of FL Roberts & Co., Inc. did not adopt a company-wide policy concerning customer contact employees and then exempt all divisions except the Jiffy Lube.  To the contrary, FL Roberts & Co., Inc. approved an employee handbook revision

270845.1                                               12

developed by Mr. Smith exclusively for the Jiffy Lube and Golden Nozzle Car Wash divisions which he managed. See Affidavit of R. Smith.

FL Roberts & Co., Inc. operates a number of divisions, including gas stations, a diner, and a hotel. Each division is operated and managed separately with its own employee handbook and Personal Appearance Policy. Mr. Smith revised the Personal Appearance Policy of Jiffy Lube and Golden Nozzle Car Wash based on the recommendations of his consultant, Power, Inc.. Jiffy Lube's Employment Handbook revisions arose from the recommendations of this consultant. The other divisions of FL Roberts & Co., Inc. did not consult with Power, Inc. and were not subjected to the same policies adopted and implemented by Mr. Smith. In other words, the Personal Appearance Policy adopted by Jiffy Lube via Mr. Smith, effective January, 2002, did not apply to other divisions or entities owned by FL Roberts & Co., Inc.. The new Personal Appearance Policy was successful and sales figures increased in 2002. Quite simply, FL Roberts & Co., Inc. could not have exempted its other divisions from the Employee Handbook revisions because the other divisions were never subjected to the revisions in the first place.

### IV.     An Outright Exemption Would Constitute an "Undue Burden" for Jiffy Lube.

Even assuming that Plaintiff satisfied his burden in his Title VII claim, and assuming that Jiffy Lube's accommodation was unreasonable, Jiffy Lube has no duty to accommodate Plaintiff because Plaintiff is seeking an exemption that would constitute an undue burden to Jiffy Lube. In *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, (1st Cir., 2004), the First Circuit determined that a Costco employee was, in effect, asking for an exemption to the no facial jewelry provisions of the employee manual because any modification to her facial piercings would constitute a violation of her religion. On this basis, the Court held that "Costco had no

duty to accommodate *Cloutier* because it could not do so without undue hardship" *Id*. at 128.

The Court stated:

> [W]e are faced with the similar situation of an employee who will accept no accommodation short of an outright exemption from a neutral dress code. Granting such an exemption would be an undue hardship because it would adversely affect the employer's public image. Costco has made a determination that facial piercings, aside from earrings, detract from the "neat, clean and professional image" that it aims to cultivate. Such a business determination is within its discretion. As another court has explained, "Even assuming that the defendants' justification for the grooming standards amounted to nothing more than an appeal to customer preference…it is not the law that customer preference is an insufficient justification as a matter of law." *Sambo's of Georgia, Inc.,* 530 F. Supp. at 91. *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 136 (1st Cir., 2004).

In the instant action, Plaintiff, like *Cloutier*, is not satisfied with any modification to his religious practices or his job responsibilities. Plaintiff wants his facial hair to remain unchanged and his job duties to remain unchanged. This "exemption" is, as in *Cloutier*, an "undue hardship" to Jiffy Lube.

> The *Cloutier* Court also noted that
>
> it is axiomatic that, for better or for worse, employees reflect on their employers. This is particularly true of employees who regularly interact with customers, as Cloutier did in her cashier position. Even if Cloutier did not personally receive any complaints about her appearance, her facial jewelry influenced Costco's public image and, in Costco's calculation, detracted from its professionalism.

Jiffy Lube, like Costco, is very concerned about the public image and professionalism displayed by employees. In *EEOC v. Sambo's of Georgia*, the court held that a restaurant imposing clean-shaven requirements did not violate Title VII. The "evidence shows that relaxation of Sambo's grooming standards as to facial hair…would impose an undue hardship on Sambo's in that doing so would adversely affect Sambo's public image and other operation of the affected restaurant as a consequence of offending certain customers and diminishing the "clean cut" image of the

restaurant and its personnel." *EEOC v. Sambo's of Georgia*, 530 F.Supp. 86, 90 (D. GA., 1981). *See also Eastern Greyhound Lines Div. of Greyhound Lines, Inc. v. New York State Div. of Human Rights*, 27 N.Y.2d 279, 283 (N.Y., 1970) ("Policy resting on a desire to promote business by greater public support could justify the exclusion by an employer of beards and have no possible religious connotation.)

Jiffy Lube made the Employee handbook revisions to enhance the success of the business. In fact, the handbook revision came about after Jiffy Lube hired an independent team to conduct a study and determine how Jiffy Lube could enhance sales. It follows that if the employee handbook revisions were motivated by increased business profits, then exemptions from the new policy would decrease business profits.

## CONCLUSION

Plaintiff failed to satisfy his burden under a Title VII claim. Even assuming that Plaintiff did satisfy his burden, Jiffy Lube reasonably accommodated Plaintiff as incorporated into the employee handbook revisions, by allowing Plaintiff to keep his job so long as customer contact was minimized. Even assuming that Jiffy Lube's accommodation was unreasonable, Jiffy Lube has no duty to accommodate Plaintiff because Plaintiff's demand for an exemption to the policy constitutes and undue hardship on Jiffy Lube.

This Court is bound by the precedent set in the *Cloutier v. Costco Wholesale* case which supports entry of summary judgment in favor of the Defendant FL Roberts & Co., Inc. d/b/a Jiffy Lube. Mr. Brown had a duty to cooperate with Jiffy Lube's good-faith efforts to accommodate him but insisted on nothing short of a complete exemption from the Personal Appearance Policy. Exemption of Mr. Brown from the policy applied to all other Jiffy Lube employees, would have presented an undue burden. Jiffy Lube had a legitimate, non discriminatory business interest in

enhancing its public image and professionalism with consumers. Jiffy Lube's interests were supported and fostered by its consultant, Power, Inc. Mr. Smith implemented the new Personal Appearance Policy consistent with the recommendations of Power, Inc. and succeeded in increasing the sales and profits of Jiffy Lube in 2002. Jiffy Lube provided Mr. Brown with an opportunity to remain employed as a lube technician. But for Mr. Brown's vulgar and threatening conduct on May 22, 2002, he may still be employed by Jiffy Lube today.

Based upon the foregoing reasons, and supporting documents, the Defendant respectfully requests that this Honorable Court deny the Plaintiff's Motion for Summary Judgment and allow the Defendant's Motion for Summary Judgment.

DATED: June 3, 2005

F.L. ROBERTS & CO., INC.
D/B/A JIFFY LUBE
BY ITS ATTORNEY,

I certify that this document has been served upon all counsel of record in compliance with F.R.C.P. on June 3, 2005

*/s/ Claire L. Thompson*
_____
Claire L. Thompson, Esq.

   */s/ Claire L. Thompson*
Claire L. Thompson, Esquire
Doherty, Wallace, Pillsbury
   & Murphy, P.C.
One Monarch Place, Suite 1900
Springfield, MA 01144-1900
Tel: (413) 733-3111
Fax: (413) 734-3910