UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

DOCKET NO. 04-30105-MAP

| | |
|---|---|
| BOBBY T. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| F.L. ROBERTS & CO., INC. | ) |
| d/b/a JIFFY LUBE, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION AND STATEMENT OF FACTS**

The plaintiff relies on, and adopts herein, the submissions made in support of his Motion for Summary Judgment, including the Statement of Material Facts, Affidavit of Bobby Brown with Exhibit, Affidavit of Bryon Fuller, Affidavit of Joel Feldman with Exhibits and Memorandum in Support of the Motion. Additionally, the plaintiff includes the following facts.

In 2001-2002, the owner of F.L. Roberts, Steven Roberts, personally approved a policy change, at his Jiffy Lubes and car wash centers, to prohibit employees with customer contact from wearing beards.1  Affidavit of Richard Smith, submitted by defendant, § 12. However, Mr. Roberts allowed every employee of all other divisions owned by F.L. Roberts to retain their

---

1 The change was apparently recommended to Richard Smith, head of the Jiffy Lube division, by a consultant called Power, Inc. Exhibit 1 to Supplemental Affidavit of Joel Feldman, Deposition transcript of Richard Smith at pp. 39, 41. However the change was unsupported by any statistical or research data provided to Mr. Smith by Power. Id. Instead, Power cited one irrelevant example to bolster its recommendation, the example of Walt Disney World in Florida. *Id.* That retail environment has no bearing on the environment at an oil change center.

beards and customer contact, including employees at the hotel owned by the defendant, the diner owned by the defendant, and the many gas stations/convenience stores owned by the defendant. *Id.*

F.L. Roberts claims now that the personal appearance policy change was a change which increased revenues. However, when pressed to provide facts to support this claim, the defendant admits that it does not know whether the "no beard" policy had any bearing on sales from the 2002-2002 year, or whether it was other changes, like a new sales model, which led to any increase. Exhibit 1 to Supplemental Affidavit of Joel Feldman, Deposition transcript of Richard Smith at pp. 45-50. Mr. Smith has admitted that, as a point of fact, he cannot prove that the "no beard" rule had any impact at all. *Id.* As to customer feedback on the appearance of employees, Mr. Smith can only state that "more than one" person over an eighteen month period commented on the personal appearance of Jiffy Lube personnel. *Id.*

Just prior to the change in the facial hair policy at the Jiffy Lube in Hadley, plaintiff Bobby Brown was an upper bay lube technician. Supplemental Affidavit of Bobby Brown, ¶ 2. As part of his job duties at that time, Mr. Brown greeted customers as they pulled up to the Jiffy Lube, and sold them products/services offered by Jiffy Lube, including engine cleaners and transmission services. Supplemental Affidavit of Bobby Brown, ¶¶ 3-4.

Once the F.L. Roberts' policy on facial hair changed, Mr. Smith instructed Bobby Brown that if he insisted on his religious practice of keeping his beard, he would be fired, or he could work in exclusively in the lower bay. Supplemental Affidavit of Bobby Brown, ¶¶ 8, 12-13. Mr. Brown did not "agree" to any accommodation to work in the lower bay; instead Mr. Brown had the "choice" of termination or banishment to the lower bay. Supplemental Affidavit of Bobby

Brown, ¶¶ 11 -13.

When Mr. Brown requested that he be permitted his customer contact, but be able to retain his beard, his request was rejected outright.  Supplemental Affidavit of Bobby Brown, ¶ 8.  F.L. Roberts offered not a single alternative or accommodation to Mr. Brown so that he could adhere to his religious beliefs and not be confined to lower bay duties.  Supplemental Affidavit of Bobby Brown, ¶ 10.  Had he known of other possible accommodations, Mr. Brown would have considered, for example, a transfer to another position at another F.L. Roberts' division, such as at a gas station/convenience store.  Supplemental Affidavit of Bobby Brown, ¶ 9.  Mr. Brown would have considered *any* other alternative to working in "the hole" all day for five months, but none was forthcoming.  Supplemental Affidavit of Bobby Brown, ¶ 9.

The lower bay position required that Mr. Brown have no customer contact, one of the parts of his job Mr. Brown liked most.  Supplemental Affidavit of Bobby Brown, ¶ 7.  The lower bay job was a great deal more dangerous for Mr. Brown; it was freezing in the winter, much more isolating than the upper bay, did not permit him breaks, and did not allow him to work with any other person on his shift, on many occasions.  Supplemental Affidavit of Bobby Brown, ¶ 5; Affidavit of Bobby Brown, ¶¶ 19- 25.  These conditions were negative changes from his former job duties after his banishment.  *Id.*

II.     ARGUMENT

A.     F.L. ROBERTS' REQUIREMENT THAT EMPLOYEES BE CLEAN SHAVEN TO MAINTAIN CUSTOMER CONTACT CONFLICTED WITH BOBBY BROWN'S RELIGIOUS BELIEFS AND HIS TRANSFER WAS ADVERSE ACTION

Mr. Brown's religious practice required him to keep his beard. Affidavit of Bobby Brown, ¶ 5. F.L. Roberts issued new rules in 2001 that no employee at any Jiffy Lube could have customer contact and keep his beard. Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 2. The stated policy of F.L. Roberts at its Jiffy Lube operations in 2001, then, was that any employee who did not wish to be fired, but wished to keep his beard, was required to work full-time in the lower bay only, all day, according to the employee handbook. Exhibit 1 to Affidavit of Joel Feldman (Defendant's Response to Plaintiff's Request for Admissions, ¶ 4; Exhibit 3 to Affidavit of Joel Feldman (Deposition transcript of Richard Smith, pp. 83, 86-87).

The policy directly conflicted with Mr. Brown's religious practice. Mr. Brown had a job "upstairs" where he interacted with customers, sold products, greeted incoming customers and engaged in the duties of the upper bay tech. He wished to keep his job. Because of the policy change, and because Mr. Brown could not shave or thereby violate his religious beliefs, F.L. Roberts banished him to the lower bay, full time, all day. The conflict is direct and clear on these facts.

It is patently untrue, as claimed by the defendant, that the upper bay job was "virtually identical" to the lower bay job. First, the difference was obviously meaningful in some way, since Mr. Brown was prohibited from working in the upper bay! Why did F.L. Roberts force

Mr. Brown, under threat of termination, to work in the lower bay only, if the jobs were the same? F.L. Roberts did so because the job duties were different, including the fact that upper bay techs *interacted with customers*, and therefore performed different functions, like selling products and services.

Second, working conditions were much worse for Mr. Brown in the lower bay as described in Mr. Brown's affidavits, undisputed by the defendant. *See* Defendant's Reply to Plaintiff's Statement of Material Facts, ¶¶ 40 – 43. The lower bay work was in the basement, without heat in the winter. Mr. Brown had no co-workers with him when working there. He was subjected to the drainage of hot oil in the lower bay, a function clearly not performed "upstairs", according to Exhibits B and C of the Affidavit of Richard Smith.2  Mr. Brown faced burns, freezing weather, solo assignments, and no lunch breaks, at times, in the lower bay, while none of these conditions existed in the upper bay. Supplemental Affidavit of Bobby Brown, ¶ 5 (citing Affidavit of Bobby Brown); *See* Defendant's Reply to Plaintiff's Statement of Material Facts, ¶¶ 40 – 43 (poor conditions of work not disputed here by defendant).

The forced transfer of Mr. Brown to a much worse working environment, without the job duties he had earlier, was an adverse action. *See, e.g., Wyatt v. City of Boston*, 35 F. 3d 13, 15 (1st Cir. 1994)(Adverse actions can include disadvantageous transfers or assignments). The new policy forced Mr. Brown either to shave his beard in violation of his religious beliefs, face termination, or accept an exclusive reassignment to a place he referred to as "the hole".  He lost a large piece of his job, which was dealing with customers, and became a worker in solitary,dangerous conditions, facts which are not disputed. *See* Defendant's Reply to Plaintiff's

---

2 In fact, Exhibits B and C delineate entirely different job duties. The purpose of the lower bay tech is to perform all

Statement of Material Facts, ¶¶ 40 - 43.

As a result, the policy implemented by F.L. Roberts impacted and conflicted with Mr. Brown's religious practice.

### B. F.L. ROBERTS OFFERED NO ACCOMMODATION FROM THE POLICY WHICH PLACED MR. BROWN'S RELIGIOUS PRACTICE IN CONFLICT WITH THE NEW POLICY ON FACIAL HAIR

The defendant appears to argue in its Memorandum that Jiffy Lube built some sort of "reasonable accommodation" into the final policy is issued. But it is that final policy that created the religious conflict for Mr. Brown--either shave or be confined to the lower bay.

Whatever went into the formulation of the policy is not relevant to Mr. Brown's individualized request for accommodation in this case. In other words, how a company comes to its final guidelines on a policy change has no bearing on the legal obligation of that company to address an employee's request for accommodation from that policy. The policy in question in this case is "no customer contact" for bearded employees, and that is the policy that created Mr. Brown's conflict.3

Mr. Brown has proved a prima facie case. See Plaintiff's Memorandum in Support of Motion for Summary Judgment, pp. 1- 10. Assuming this to be true, the defendant must then show that it offered a reasonable accommodation, or that offering such an accommodation would

---

of the under *vehicle* services, while the upper bay tech performs under *hood* services. The lower bay tech is the employee who clearly addresses the drainage of the burning hot oil from the car.

3 F.L. Roberts argues in its Memorandum, p. 11, that it "compromised its desire for all employees to be clean shaven", thereby claiming that it accommodated *all employees* by not implementing a more draconian "no beard" policy. But later in its brief, the defendant states that it was simply trying to impress customers with its new policy. Defendant's Memorandum at p. 14 (public image was the reason for the change). Requiring the shaving of all beards for employees with no customer contact would clearly not help F.L. Roberts with its public image. Obviously, employees with beards who do not see customers make no impact on those customers one way or another. The new F.L. Roberts' policy, then, was to ban all employees who saw customers. This could hardly be described as a "lenient" ban considering that any ban covering employees without public contact would not improve the public image the company would choose to foster, and would have to be viewed as merely punitive.

cause undue hardship. *Cloutier v. Costco Wholesale Corporation*, 390 F. 3d, 126, 133 (1st Cir. 2004).

The defendant failed to offer any accommodation to Mr. Brown. The undisputed facts are: (1) the defendant imposed its policy of no customer contact if an employee kept his facial hair (i.e, confinement to the lower bay); (2) Mr. Brown asked that his religious practice be accommodated, through a request that he be allowed to shave and still keep his upper bay job duties; (3) the defendant strictly followed its new policy and confined Mr. Brown to the lower bay, forbidding him from working as an upper bay tech.

As the defendant aptly notes "the search for a reasonable accommodation goes both ways." *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 198 (D. Mass. 2004)(further citation omitted). In its argument, the defendant chooses to ignore that the only "way" that the "search for a reasonable accommodation" was conducted *in this case* was by Mr. Brown. He initiated the search for a reasonable accommodation by asking that his job duties not be removed, saying that his religious beliefs mandated keeping his beard. Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment, ¶¶ 24 -30. The undisputed facts show that the defendant halted the "search" completely, and never offered Mr. Brown any option at all, save following its own policy of moving him to "the hole". Affidavit of Bobby Brown, ¶ 31.

Following a company policy to the letter is not a reasonable accommodation. Certainly, a company can claim an undue burden, and therefore not be required to provide an accommodation, but strictly enforcing such the company policy fails the test of *Cloutier*.

In this case, unlike Ms. Cloutier's, Mr. Brown was indisputably open to other

alternatives. Supplemental Affidavit of Bobby Brown, ¶¶ 8-10. 4  Had he known of a possible transfer to another division of F.L. Roberts, like the gas station/convenience store division where beards were acceptable for all, he would have been willing to accept it. *Id.* Unlike Ms. Cloutier, Mr. Brown rejected no offer of any accommodation by F.L. Roberts, because the only offer made to him was to follow the company policy of lower bay work only, or be fired.

Mr. Brown was ready to engage with the defendant on the search for terms of any accommodation that would have prevented him from working only in the lower bay. *Id.* The defendant offered no accommodation, other than imposing the policy it created, to prohibit customer contact if an employee will not shave. There is no "reasonable accommodation" offered when following to the letter the policy creating the religious conflict for an employee, and the defendant therefore has failed to meet its burden on this point.

        C.      THE CLAIMED UNDUE BURDEN BY THE DEFENDANT HAS NO BASIS IN THE FACTS PROVIDED TO THIS COURT

The defendant also claims that the accommodation requested by Mr. Brown would have caused an undue burden.5  As noted above, other accommodations could have been suggested by the company, which might not have caused an undue burden, such as transfer to another store, or work in the upper bay with limited customer contact, perhaps without greeting customers. Supplemental Affidavit of Bobby Brown, ¶ 10. The *Cloutier* Appeals Court panel looked only at the "exemption" accommodation because the evidence before the court indicated that this was the only acceptable accommodation to Ms. Cloutier. That is not the case here, since Mr. Brown

---

4 Ms. Cloutier, this court found, had resisted any other accommodation proposed by Costco. Mr. Brown was offered no choice and no accommodation, a key factual difference. The defendant has provided no facts to this court that Mr. Brown rejected any accommodations, or insisted exclusively on his proposed accommodation. In fact, his Affidavits are to the contrary.
5 This analysis focuses only on federal law as the state law analysis follows.

rejected no offer of accommodation from the policy, and was not wedded to his initial offer. *See* Affidavits of Bobby Brown.

But even if he were, the facts of this case show that no undue burden on F.L. Roberts would have occurred had Mr. Brown's request been granted. The company alleges in its papers that the company "like Costco, is very concerned about the public image and professionalism displayed by employees." Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, p. 14.

The defendant here is the entire F.L. Roberts company as a corporate entity. There are no facts before this court showing that F.L. Roberts made the determination that "public image" warrants a policy of no beards for customer contact employees throughout the company; instead the facts show that F.L. Roberts permits many of its employees in its similarly situated retail divisions to keep their beards. Beards are allowed at convenience stores/gas stations for cashiers, beards are allowed for hotel employees with customer contact, and beards are allowed for cooks and waiters at F.L. Roberts' diner. It is only in the oil change division and car wash division that beards are in any way prohibited for customer contact employees.

Unlike Costco, which sought to enforce its policy in every department, F.L. Roberts cannot claim harm to its public image if bearded employees sell products to customers at Jiffy Lubes, because bearded employees sell products to other customers at convenience stores and at its diner. F.L. Roberts has submitted no evidence to this court that the public image it must cultivate at Jiffy Lube is different than the public image it must cultivate at F.L. Roberts' gas stations/convenience stores. It is not enough to provide a "hypothetical hardship" when a company claims undue burden—specific hardships must be tied to specific accommodations.

9

*Cloutier*, 390 F. 3d at 135.  The company cannot claim that its Jiffy Lube stores and car wash division will lose F.L. Roberts its professional image with bearded employees interacting with customers, while all other divisions can apparently maintain that professional image with bearded employees serving customers at diners, hotels and gas stations/convenience stores. Unlike in the *Cloutier* case, F.L. Roberts introduced in evidence no uniform policy on beards throughout its similar retail environments, in this case oil change centers (no beards) and gas stations/convenience stores (beards allowed).

      F.L. Roberts' claim of "undue burden" must fall based upon the facts of this case.  Unlike in the *Cloutier* case, the defendant does not face a plaintiff who was completely wedded to only one accommodation.  Mr. Brown was open to alternatives, as his Affidavits demonstrate, and F.L. Roberts has shown that no "undue burden" would result from some other alternative which it failed to offer.

      Finally, some cases cited by the defendant show the distinction between Mr. Brown's case, and those cases which do not require accommodation of religion in the personal appearance realm.  Central to the *Sambo's of Georgia* decision, mentioned multiple times by the defendant to prove that no accommodation is necessary when personal appearance is at issue, is that the "no beard" policy was implemented at a restaurant, where a "basis for Sambo's restaurant policy is sanitation", evidence showed customers might find hygiene to be lax at the restaurant because of the beard of employees and "excessive growth of facial hair shall be considered a violation of food service rules" under the state of Georgia's guidelines.  *E.E.O.C. v. Sambo's of Georgia, Inc.*, 530 F. Supp. 86, 89-90 (N.D. Ga. 1981).   No "hygiene" related claim has been raised in this case, and no evidence introduced on this point at all.  In fact, the evidence provided to this

court shows that the one restaurant owned by F.L. Roberts does permit facial hair on its employees. Mr. Brown provided this court photos of the cooks at the F.L. Roberts' diner to show that they had beards while working at the diner. Exhibit 1 to Affidavit of Bobby Brown. The one F.L. Roberts store which may implicate hygiene standards, the restaurant, permits bearded employees. Mr. Brown would have accepted other alternatives which would not have caused an undue burden for the defendant. F.L. Roberts cannot claim that one employee wearing a beard would ruin its public image when so many other employees wear beards at similar F.L. Roberts' work sites. The defendant's federal "undue burden" defense should therefore fail.

        D.        THE DEFENDANT HAS FAILED TO ADDRESS IN ANY WAY MR. BROWN'S CLAIM CONCERNING THE DEFENDANT'S RESPONSIBILITIES UNDER STATE LAW

Mr. Brown asserted a state law discrimination claim as well as a federal claim. The defendant simply ignores this claim throughout its Memorandum, except for one mention on page 9.

That mention does not address in any way the differences between state law and federal law. Mr. Brown need not repeat the argument made in his Memorandum in Support of Motion for Summary Judgment. See, Plaintiff's Memorandum at pp. 16-20. Suffice to say that the wording of the statute is not exactly similar, leading the state's Supreme Judicial Court to require a search into whether a company could have exercised its discretion to accommodate religious requirements. *N.Y. & Mass. Motor Serv., Inc.*, 401 Mass. 566, 576, 517 N.E. 2d 1270, 1276 (1988). As noted in the Plaintiff's Memorandum, the defendant has provided no evidence on this point at all. *Id*. at 18.

A more telling omission is the defendant's failure in its Memorandum to address the

Massachusetts Commission Against Discrimination's requirement of an "interactive process" in religious accommodation cases. See, Plaintiff's Memorandum at pp. 19-20 (citing *Marquez v. Massachusetts Bay Transportation Authority*, MCAD Docket No. 97-BEM-3223, 25 MDLR 478 (2003). The defendant must engage in the two-way search described earlier for some accommodation that may satisfy both parties to a religious discrimination dispute, described as a "meaningful dialogue" in the *Marquez* case. The defendant has given this court no evidence of that dialogue, because there was none. On this point, the defendant's undue burden defense must sink, because F.L. Roberts simply refused to converse with Mr. Brown at all after rejecting his request for accommodation.

      State law requires different behavior, and has different rules, than does federal law in religious accommodation cases. The defendant's failure to address this point proves that no facts are disputed concerning the lack of an "interactive process" and the *Marquez* case requires judgment for the plaintiff on his state claims.

### III.    CONCLUSION

F.L. Roberts did not make any individualized accommodation to Mr. Brown's request that he be permitted to keep his job and practice his religion. It did not offer a single alternative to Mr. Brown to investigate fully any action to allow him to practice religion and not face adverse action, such as a transfer to another division. It simply ignored his plea and strictly followed company handbook policy. It engaged in no meaningful dialogue with Mr. Brown at all, preferring to put him "in the hole" exclusively. Its own company actions show that it was not an undue burden to allow one employee to have facial hair, when customer contact employees throughout the company had facial hair.

These actions prove a violation of federal Title VII law and state law under c. 151B. Mr. Brown requests that this court enter judgment for him under his claims, and deny the defendant's request for judgment.

BOBBY BROWN
By his attorney,

| | |
|---|---|
| I hereby certify that a true copy of the above document was served upon counsel for the defendant, by mail (by hand) on _____. | /s/ Joel Feldman<br>Joel Feldman<br>BBO # 552963<br>Heisler, Feldman & McCormick, P.C.<br>1145 Main Street, Suite 508<br>Springfield MA  01103<br>(413)788-7988<br>(413)788-7996 (fax) |

_____

Date:_____